249 N.J. Super. 91 (1991)
592 A.2d 17
RONALD CHARNECKY, PLAINTIFF-APPELLANT,
v.
AMERICAN RELIANCE INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1991.
Decided June 21, 1991.
*92 Before Judges GAULKIN, HAVEY and SKILLMAN.
Frank P. Lucianna argued the cause for appellant (Lucianna & Lucianna, attorneys; Diane M. Lucianna of counsel; Diane M. Lucianna and Athan M. Mergus, on the brief).
Gregory D. Winter argued the cause for respondent (Felzenberg, Winter & Winkler, attorneys; Gregory D. Winter on the brief).
The opinion of the court was delivered by GAULKIN, P.J.A.D.
The issue raised by this appeal is whether a workers' compensation lien attaches to the proceeds of an uninsured motorist (UM) recovery where the UM proceeds, together with the compensation payments, are assertedly less than the full amount of plaintiff's loss. In Midland Ins. Co. v. Colatrella, 102 N.J. 612, 617, 510 A.2d 30 (1986), the Supreme Court held that the lien attached where the UM claim was settled under the policy limits. However, the Court left unresolved "the more difficult question whether the workers' compensation lien should attach when the uninsured motorist coverage is less than the full amount of plaintiff's damages." Id. at 619, 510 A.2d 30.
In the present case, plaintiff obtained a compensation award and settled his UM claim for the policy limit, but contends that he has still not been paid the full amount of his damages. The Law Division found that the compensation carrier nevertheless *93 is entitled to be repaid from the UM recovery. We find that result neither necessary nor fair and accordingly reverse.
The facts are uncomplicated. During the course of his employment, plaintiff was involved in a motor vehicle accident with a hit and run driver. As a result of his injuries, which included a fracture of the left femur shaft and both feet, as well as cartilage injury to the left knee, plaintiff recovered $158,819.59 in workers' compensation benefits from defendant, his employer's workers' compensation carrier. Plaintiff also made a claim for UM coverage under his own automobile insurance policy which, coincidentally, was also issued by defendant. Defendant tendered the policy limit, $100,000, and by stipulation the net proceeds (after deduction of counsel fees and costs) were placed in escrow pending a determination as to whether they were subject to a compensation lien. Plaintiff thereupon instituted the present declaratory judgment action for a determination as to whether the lien attaches. Relying on Midland, the Law Division judge held that defendant was entitled to retain the net UM proceeds as partial reimbursement of its compensation payments.
In Midland, Colatrella had settled his UM claim for $27,500, which was $2,500 less than the $30,000 policy limit. The Supreme Court permitted Midland, the compensation carrier, to recapture from the UM settlement the $9,270.52 it had paid in compensation benefits, finding in N.J.S.A. 34:15-40 a legislative intent "that a compensation lien should attach to the recovery from a third-party tortfeasor." Id. at 618, 510 A.2d 30; see also Christy v. City of Newark, 102 N.J. 598, 609-610, 510 A.2d 22 (1986). But the Court specifically declined to characterize an uninsured motorist or its carrier as a "third person" within the meaning of the statute and instead relied "on the belief that the primary concern of the Legislature here, as in other work-related injuries caused by third-party tortfeasors, is to integrate the sources of recovery." Midland, 102 N.J. at 618, 510 A.2d 30. Indeed, if the insured motorist or its carrier were a "third person" within the meaning of N.J.S.A. 34:15-40, there would *94 appear no need or basis for the Court to reserve "the more difficult question whether the workers' compensation lien should attach when the uninsured motorist coverage is less than the full amount of plaintiff's damages." Id. at 619, 510 A.2d 30.
The Supreme Court in Midland thus found no statutory lien, but rather imposed a lien as a judicial remedy to assure that "[i]n the present case, the Workers' Compensation Act and the uninsured motorist statute worked as the Legislature intended." Ibid. That remedy "worked", the Court explained, because
Colatrella promptly received benefits under the Workers' Compensation Act and later settled his uninsured motorist claim under the policy limits. [Emphasis supplied.]
Ibid. It was "[b]ecause of that settlement" that the Court found it unnecessary to decide "the more difficult question" whether the lien should attach when the UM coverage is less than the full amount of plaintiff's damages. Ibid.
The significance of the UM settlement under the policy limits was that it established that Colatrella had obtained duplicate recoveries for the same expenses.[1] Where an injured party's combined compensation and UM recoveries do not indemnify him in full for his loss, the remedy fashioned in Midland to forestall a double recovery is inappropriate and unjust. The relevant equitable principle is that "the right of subrogation does not arise until the injured party has been made whole." Culver v. Ins. Co. of North America, 221 N.J. Super. 493, 500, 535 A.2d 15 (App.Div. 1987), rev'd on other grounds, 115 N.J. 451, 559 A.2d 400 (1989).
... [D]espite the insurer's general subrogation right, it is clear that if an insured who has recovered only part of his loss from his insurer then recovers *95 an additional payment from the tortfeasor, he has no liability to repay the insurer unless the total recovery exceeds his total loss. The rule formulated by Camden Fire Ins. Asso. v. Prezioso, 93 N.J. Eq. 318, 320 [116 A. 694] (Ch. 1922), is that "the insured can be called upon to account to the insurer-subrogee, only if he has recovered more from the insurer and the wrong-doer than the total of his loss, and then only for the excess. The excess he holds in trust for the insurer." See also, adopting this formulation, Federal Insurance Co. v. Engelhorn, 141 N.J. Eq. 349, 351 [57 A.2d 478] (E. & A. 1947).
Id. 221 N.J. Super. at 501-502, 535 A.2d 15.
Application of those equitable principles here gives maximum effect to both the purposes of workers' compensation third-party practice and the UM statute. Professor Larson states the analysis cogently:
The theory of third party procedure in compensation law rests on the assumption that typically the third-party recovery will cover all of plaintiff's loss, and that therefore to retain the tort recovery and compensation would result in double recovery of the first sort, that is, exceeding actual loss. What throws everything out of balance when third party procedure is extended to the proceeds of uninsured motorist endorsements is that typically the injured person's recovery under that endorsement, because of low policy limits such as $5,000 or $10,000, will not cover all his loss. Usually any "double recovery," then, would be of the second sort, that is, falling short of actual loss.
We are now ready to ask: is the second sort of double recovery obnoxious to the policies of compensation acts or uninsured motorist acts, or to public policy in general? The question almost answers itself. There can be no conceivable policy objection to allowing an injured person to retain two recoveries that, when combined, still do not make him whole.
2A Larson, Workmen's Compensation Law § 71.23(h) at 14-37 (1990).
Professor Larson also states what we find to be a persuasive response to defendant's argument that a UM recovery should be subject to the same rules as any other third-party recovery:
But this overlooks one crucial difference: the uninsured motorist proceeds were the product of insurance paid for by the employee. There is no conceivable reason why a compensation carrier should have any claim on them. In the normal third-party situation, however, the tort proceeds owe nothing to the employee's expenditure. It should be added that, since this kind of markedly inadequate tort recovery is not usual in regular third party practice, it only distorts matters to use it as a basis for making policy as to uninsured motorist cases.
Id. at 14-39.
The judgment awarding defendant the UM proceeds is reversed. *96 The matter is remanded to the Law Division[2] for a determination of the full amount of plaintiff's damages and for the entry of judgment imposing a lien on the UM proceeds only if and to the extent those proceeds, together with the compensation payments, exceed the full amount of plaintiff's damages.
NOTES
[1] See Midland Ins. Co. v. Colatrella, 200 N.J. Super. 101, 108-109, 490 A.2d 366 (App.Div. 1985), aff'd 102 N.J. 612, 510 A.2d 30 (1986), noting that Colatrella had obtained "duplication of recoveries for the same expenses"; this court found that "it is entirely equitable to permit recovery under more than one source toward the end that the claimant is fully indemnified."
[2] The parties have not briefed or argued, and we express no view concerning, whether the determination of damages should properly be by arbitration. Our remand to the Law Division does not foreclose that court from referring the issue to arbitration.