263 N.J. Super. 434 (1993)
623 A.2d 252
ANTHONY M. STABILE AND PATRICIA STABILE, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1993.
Decided April 2, 1993.
*437 Before Judges MICHELS, BAIME and WALLACE.
Richard M. Mandel argued the cause for appellants (O'Brien, Liotta & Mandel, attorneys; Mr. Mandel and Leslie A. Santora, on the brief).
Moira E. O'Connell argued the cause for respondents (McElroy, Deutsch & Mulvaney, attorneys; Ms. O'Connell, of counsel and on the brief; William E. Hinkes, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
The novel issue presented is whether a workers' compensation lien attaches to the proceeds of underinsured motorist coverage (UIM) paid by an injured worker's personal automobile insurance carrier. We hold that the lien applies if and to the extent those proceeds, together with the compensation benefits and the tortfeasor's insurance payment, exceed the full amount of the worker's damages.

I.
While engaged in work-related activity, plaintiff Anthony M. Stabile sustained injuries when the automobile he was driving was struck by a vehicle operated by Gina Menta. As a result of the accident, plaintiff was hospitalized for one week and missed work for approximately four months. Defendant New Jersey Manufacturers Insurance Company (NJM) settled plaintiff's workers' compensation claim in the amount of $25,464.07.
*438 Plaintiff and the two occupants of his vehicle who were also injured in the accident instituted separate third-party actions against Menta. These suits were later consolidated and Menta's $30,000 liability policy was deposited into court. This amount was ultimately divided equally between the three claimants. Pursuant to N.J.S.A. 34:15-40, plaintiff's $10,000 share was forwarded to NJM.
Plaintiff then sought additional recovery from his personal automobile insurer, State Farm Insurance Company (State Farm), based upon his UIM coverage. Pursuant to the terms of the insurance contract, the UIM claim was submitted to arbitration. After all of the evidence was presented, a question arose as to the necessity or appropriateness of the arbitrators entering an award in excess of the UIM policy limit, $100,000. At plaintiff's request, the panel decided to determine the actual amount of damages sustained. The arbitrators found that Menta was at fault and that the true amount of damages was $125,000. Menta's $10,000 payment was deducted from the $100,000 UIM policy limit and plaintiff ultimately received $90,000 from State Farm.
NJM, who had been notified of the UIM arbitration, claimed that its workers' compensation lien applied to the UIM recovery. The parties agreed that the amount in dispute would be placed in an interest bearing escrow account. Plaintiff then instituted a declaratory judgment action in the Law Division, contending that a compensation lien does not attach to the proceeds of a UIM provision. Alternatively, plaintiff asserted that his actual damages exceeded the amount paid to him on account of the accident and thus he had no duty to reimburse NJM for the amount of the compensation benefits received. NJM claimed that the UIM award served as a substitute for a third party recovery and was thus subject to the compensation lien provided by N.J.S.A. 34:15-40. The Law Division judge issued a letter opinion in which he essentially adopted NJM's position. He also found that the "combined compensation, third party and UIM recoveries" fully indemnified plaintiff for his *439 loss and that he was therefore bound to satisfy NJM's compensation lien.

II.
We first address whether a compensation lien attaches to the proceeds of a UIM provision. Although we have found no reported New Jersey opinion dealing with this precise issue, we do not write on a blank slate. In Midland Ins. Co. v. Colatrella, 102 N.J. 612, 510 A.2d 30 (1986), our Supreme Court concluded that a workers' compensation lien applied to proceeds paid by an injured employee's uninsured motorist coverage (UM). Id. at 618, 510 A.2d 30. In reaching this result, the Court characterized a UM provision as essentially "a contractual substitute for a tort action against [the] uninsured motorist." Id. at 617, 510 A.2d 30. Under the workers' compensation law, when an injured employee has received compensation benefits and later recovers a greater sum from a third person liable for those injuries, the employee must reimburse the employer or its compensation carrier to the extent of the benefits paid. N.J.S.A. 34:15-40(b). The Court reasoned that "[b]ecause recovery under uninsured motorist insurance is premised on the tortious conduct of another, the proceeds of that recovery, like the proceeds of an injured employee's third-party action, should be subject to a compensation lien." Midland Ins. Co. v. Colatrella, 102 N.J. at 617, 510 A.2d 30. The Court based its decision not on the express wording of N.J.S.A. 34:15-40, see Midland Ins. Co. v. Colatrella, 200 N.J. Super. 101, 106, 490 A.2d 366 (App.Div. 1985); Montedoro v. Asbury Park, 174 N.J. Super. 305, 308, 416 A.2d 433 (App.Div. 1980), but rather "on the belief that the primary concern of the Legislature here, as in other work-related injuries caused by third-party tortfeasors, is to integrate the sources of recovery." Midland Ins. Co. v. Colatrella, 102 N.J. at 618, 510 A.2d 30.
In our view, the principles set forth in Colatrella apply with equal force here. We recognize the differences between UM *440 and UIM coverage. UM coverage is mandated by the Legislature. N.J.S.A. 39:6A-14. UIM coverage is not compulsory. N.J.S.A. 17:28-1.1(e) defines UIM coverage as follows:
For the purpose of this section (1) "underinsured motorist coverage" means insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance or use of an underinsured motor vehicle. Underinsured motorist coverage shall not apply to an uninsured motor vehicle. A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery. A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered after all bodily injury liability insurance or bonds.
Whether a motorist purchases UIM coverage is an optional personal decision. The motorist with UIM coverage cannot collect unless his policy limit and, of course, the value of his claim, exceed the limits of "bodily injury liability insurance or bonds applicable at the time of the accident" and those limits have been exhausted. Ibid. "The purpose of New Jersey's statute is [thus] to protect the insured up to the UIM limits purchased and not to make an injured person whole again." Bauter v. Hanover Ins. Co., 247 N.J. Super. 94, 96, 588 A.2d 870 (App.Div.), certif. denied, 126 N.J. 335, 598 A.2d 893 (1991). UIM coverage has been described as a "gap filler," id. at 99, 588 A.2d 870, and likened to "first-party excess" insurance, Nikiper v. Motor Club of America Cos., 232 N.J. Super. 393, 399, 557 A.2d 332 (App.Div.), certif. denied, 117 N.J. 139, 564 A.2d 863 (1989). See also Prudential Ins. v. Johnson, 238 N.J. Super. 1, 6-7, 568 A.2d 1193 (App.Div. 1989).
This much conceded, the similarities between UIM and UM coverage are greater than the differences in the context of the issue presented. The parallel tracks the two kinds of coverage have taken were recounted at length by Judge Pressler *441 in Longworth v. Van Houten, 223 N.J. Super. 174, 538 A.2d 414 (App.Div. 1988). We need not retread upon ground so ably covered in that opinion. Suffice it to say, "the legislative scheme in respect of UM and UIM coverage was intended to be basically congruent in affording the insured a contractual right against his own insurer to compensate at least in part for the tortfeasor's insurance inadequacy." Id. at 193, 538 A.2d 414. The point to be stressed is that whether that inadequacy is no insurance at all or underinsurance has no conceptual consequence. In both instances, the insured victim's recovery is, to a greater or lesser extent, a substitute for that which would have been derived from a third-party suit but for the inadequacy of the tortfeasor's insurance. The only difference is that in the case of no insurance, the carrier is obligated to pay its own insured up to the coverage limit. In the case of underinsurance, the carrier is obligated to pay its insured up to the coverage limit less the tortfeasor's coverage limit. Ibid. Everything else is the same, including the necessity of finding fault on the part of the uninsured or underinsured driver. See Prudential Prop. & Cas. v. Kress, 241 N.J. Super. 81, 86-87, 574 A.2d 482 (App.Div. 1990); Gold v. Aetna Life & Cas. Ins. Co., 233 N.J. Super. 271, 276, 558 A.2d 854 (App.Div. 1989).
Contrary to plaintiff's argument, application of the compensation lien does not serve as a disincentive to the purchase of UIM coverage. Although the worker is required to reimburse his compensation carrier from the proceeds of the UIM provision, this result does not deprive him of the benefit of his automobile insurance. The worker's total recovery need not be limited to the level of benefits provided by the workers' compensation law. Moreover, as we will discuss shortly, the lien applies only if and to the extent the combination of compensation benefits, tortfeasor payments, and UIM proceeds exceed the worker's damages. In any event, it is inconceivable that a motorist's personal decision whether or not to purchase UIM coverage rests solely on the consequences of his involvement in a work-related automobile accident.
*442 As in the case of UM coverage, we are convinced that the overarching concern of the Legislature was to integrate the sources of recovery emanating from a work-related automobile accident. We thus conclude that a compensation lien may attach to the proceeds of an injured worker's UIM provision.

III.
In Colatrella, the insured promptly received workers' compensation benefits and later settled his UM claim under the policy limits. Because of that settlement, the Court did not reach "the more difficult question whether the workers' compensation lien should attach when the uninsured motorist coverage is less than the full amount of plaintiff's damages." 102 N.J. at 619, 510 A.2d 30.
That question was later decided in Charnecky v. American Reliance Ins., 249 N.J. Super. 91, 592 A.2d 17 (App.Div. 1991), aff'd, 127 N.J. 188, 603 A.2d 512 (1992). There, we, and ultimately the Supreme Court, held that "[w]here an injured party's combined compensation and UM recoveries do not indemnify him in full for his loss, the remedy fashioned in Midland to forestall a double recovery is inappropriate and unjust." 249 N.J. Super. at 94, 592 A.2d 17. Relying upon traditional subrogation principles, we stressed that "if an insured who has recovered only part of his loss from his insurer then recovers an additional payment from the tortfeasor, he has no liability to repay the insurer unless the total recovery exceeds his total loss." Id. at 94-95, 592 A.2d 17 (quoting Culver v. Ins. Co. of North America, 221 N.J. Super. 493, 501-502, 535 A.2d 15 (App.Div. 1987), rev'd on other grounds, 115 N.J. 451, 559 A.2d 400 (1989)). Because no decision had been made regarding the amount of plaintiff's actual loss, we remanded the matter to the Law Division for a determination of damages. 249 N.J. Super. at 96, 592 A.2d 17. We emphasized, however, that the compensation lien applied "only if and to the extent [the UM] proceeds, together with compensation payments, *443 exceed[ed] the full amount of plaintiff's damages." Ibid.
NJM contends that Charnecky was wrongly decided because full indemnification for a claimant's loss, as a gauge by which to measure the extent of a workers' compensation lien, is not provided for by the "plain, clear language" of N.J.S.A. 34:15-40. It is argued that, under Charnecky, an employee-accident victim of an uninsured driver fares better than an employee-accident victim of an insured driver. As we noted in Charnecky, this argument overlooks one crucial difference: "the uninsured motorist proceeds [are] the product of insurance paid for by the employee." Id. at 95, 592 A.2d 17 (quoting 2A Larson, Workmen's Compensation Law § 71.23(h) at 14-39 (1990)). In the normal third-party situation, however, the tort proceeds owe nothing to the employee's expenditure. In any case, our decision in Charnecky was affirmed by the Supreme Court. This is not the appropriate forum to address NJM's arguments.
Applying the principles set forth in Charnecky, we are satisfied that the compensation lien should not apply to plaintiff's UIM recovery. The UIM provision provided coverage in the amount of $100,000. The payment received by plaintiff from Menta was deducted from this amount pursuant to N.J.S.A. 17:28-1.1(e) and was forwarded to NJM in accordance with N.J.S.A. 34:15-40. Plaintiff thus received $90,000 from State Farm and $25,464.07 from NJM. Plaintiff's net recovery was thus $115,464.07, clearly less than his loss, $125,000.

IV.
NJM contends that it should not be bound by the arbitrators' determination of plaintiff's actual loss. In support of its contention, NJM points out that in Charnecky we remanded the matter to the Law Division for a determination of the plaintiff's damages.
*444 In terms of issue preclusion, it is obvious that neither the doctrine of res judicata nor collateral estoppel bars relitigation of the damage question. NJM was not a party or in privity with a party to the earlier adjudication. See, e.g., State v. Gonzalez, 75 N.J. 181, 189, 380 A.2d 1128 (1977); Allesandra v. Gross, 187 N.J. Super. 96, 105, 453 A.2d 904 (App.Div. 1982); see also Kostelanetz, Ritholz v. Himmelwright, 254 N.J. Super. 249, 252, 603 A.2d 168 (Law Div. 1991). Moreover, State Farm had no incentive to contest damages once it was determined that plaintiff's loss exceeded the policy limits. The only party that arguably had anything to lose by an award greater than the policy limits was NJM, which although given notice, had neither the right nor the opportunity to participate in the arbitration proceedings. See Nogue v. Estate of Santiago, 224 N.J. Super. 383, 386-87, 540 A.2d 889 (App.Div. 1988).
Having said this, we are satisfied that the interests of justice militate against remanding the matter to the Law Division in this case. We stress that NJM did not raise this point in the declaratory judgment action and has never suggested that the amount of damages set by the arbitrators was excessive or unreasonable. In Charnecky, we noted in passing that the determination regarding damages could be by arbitration, although we expressed no view on the subject. Charnecky v. American Reliance Ins., 249 N.J. Super. at 96 n. 2, 592 A.2d 17. In light of NJM's apparent acquiescence in the reasonableness of the damages fixed by the arbitrators, we leave the issue for another day.
The judgment of the Law Division is reversed.