276 N.J. Super. 84 (1994)
647 A.2d 472
CHRISTOPHER FRAZIER, PLAINTIFF-RESPONDENT,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, AN INSURANCE COMPANY LICENSED IN THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT. CHRISTOPHER FRAZIER, PETITIONER-RESPONDENT,
v.
AUTOTRON ELECTRIC, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1994.
Decided September 22, 1994.
*85 Before Judge SHEBELL, SKILLMAN and WALLACE.
Moira E. O'Connell, argued the cause for appellant, New Jersey Manufacturers Insurance Company (McElroy, Deutsch & Mulvaney, attorneys; Moira E. O'Connell, of counsel, and on the brief).
Hilton L. Stein, argued the cause for respondent, Christopher Frazier (Hilton L. Stein, attorney; Leonard A. Giusti, and Mr. Stein, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
In this case we revisit the issue of whether a workers' compensation lien attaches to the proceeds of a legal malpractice action brought to recover damages from the attorney who failed to properly prosecute a third party action against the tortfeasor responsible for the worker's injury. Notwithstanding the earlier decision of this court in Wausau Ins. Cos. v. Fuentes, 215 N.J. Super. 476, 522 A.2d 440 (App.Div. 1986), we hold that the legal malpractice recovery in question is subject to the workers' compensation lien of N.J.S.A. 34:15-40.
On March 4, 1987, Christopher Frazier was injured at work while employed by Autotron Electric, Inc. ("Autotron"). On July 11, 1987, Frazier's then attorney filed a workers' compensation claim on Frazier's behalf against New Jersey Manufacturers Insurance Company ("NJM"), the workers' compensation insurer of Autotron.
*86 In January 1992, Frazier, through new counsel, asserted a legal malpractice claim against his former attorney for failure to file suit against a general contractor, as an alleged third-party tortfeasor, within the period of the statute of limitations. On June 3, 1992, NJM's attorney gave notice to Frazier's attorney in the malpractice action that NJM would assert a compensation lien against the proceeds of any recovery. On September 5, 1992, Frazier settled the malpractice claim for $675,000, an amount less than the policy limit of the malpractice insurance.
On February 18, 1993, Frazier filed a complaint for declaratory judgment in the Chancery Division, Middlesex County, asserting that NJM did not hold a valid workers' compensation lien against the proceeds of the malpractice settlement. NJM counterclaimed for judgment enforcing a workers' compensation lien against the malpractice settlement proceeds and seeking to assert the lien against future payments.
NJM and Frazier each moved for summary judgment. Frazier also moved to amend his complaint to seek damages and an accounting, alleging that NJM breached a "duty to review, compromise when appropriate, or otherwise manage the payment of medical bills charged directly to Plaintiff," and failed to "properly administer plaintiff's benefits under the Workers' Compensation laws."
On January 7, 1994, after oral argument, the Chancery Division judge granted summary judgment in Frazier's favor on the lien issue, relying on this court's opinion in Wausau Ins. Cos. v. Fuentes, supra. The judge also granted Frazier's motion to amend the complaint, noting that "the issues of what's raised by the proposed complaint [are not] ripe for a court to evaluate until they're put into issue." Frazier filed his amended complaint on January 21, 1994. We thereafter granted NJM's motion for leave to file an interlocutory appeal of the Chancery Division order.
On March 24, 1994, a Workers' Compensation judge entered a judgment declaring Frazier totally and permanently disabled. The judge also held that NJM "is precluded from exerting a *87 statutory lien pursuant to N.J.S.A. 34:15-40 against the settlement proceeds of the legal malpractice lawsuit previously pursued by petitioner." NJM paid workers' compensation benefits to Frazier that totalled $149,977.64 as of April 21, 1994. NJM also appealed from the workers' compensation judgment and we granted NJM's motion to consolidate the two appeals.
N.J.S.A. 34:15-40 provides as follows:
Where a third person is liable to the employee or his dependents for an injury or death, the existence of a right of compensation from the employer or insurance carrier under this statute shall not operate as a bar to the action of the employee or his dependents, nor be regarded as establishing a measure of damage therein. In the event that the employee or his dependents shall recover and be paid from the said third person or his insurance carrier, any sum in release or in judgment on account of his or its liability to the injured employee or his dependents, the liability of the employer under this statute shall be only such as is hereinafter in this section provided.

(a) The obligation of the employer or his insurance carrier under this statute to make compensation payments shall continue until the payment, if any, by such third person or his insurance carrier is made.
(b) If the sum recovered by the employee or his dependents from the third person or his insurance carrier is equivalent to or greater than the liability of the employer or his insurance carrier under this statute, the employer or his insurance carrier shall be released from such liability and shall be entitled to be reimbursed, as hereinafter provided, for the medical expenses incurred and compensation payments theretofore paid to the injured employee or his dependents less employee's expenses of suit and attorney's fees as hereinafter defined.
[Id. (emphasis added).]
Since our decision in Wausau Ins. Cos. v. Fuentes, our Supreme Court has held that the Legislature's intent in adopting N.J.S.A. 34:15-40 was that a workers' compensation lien should attach against an employee's recovery when the recovery is predicated or premised on the tortious conduct of a third-party. Midland Ins. Co. v. Colatrella, 102 N.J. 612, 617, 510 A.2d 30 (1986).[1] In Midland, the workers' compensation provider was granted a lien *88 against settlement proceeds from the employee's uninsured motorist insurance policy. The employee had argued that N.J.S.A. 34:15-40 only applies to recoveries obtained directly from a third-party tortfeasor.
In holding that a compensation lien attaches against the proceeds from an uninsured motorist policy, the Midland court reasoned that
[i]n effect, an uninsured motorist provision is a contractual substitute for a tort action against an uninsured motorist. By comparison, the acts of the third-party tortfeasor produce the recovery to which the compensation lien attaches. Thus, the tortious act of a third-party is the predicate for both recovery of uninsured motorist proceeds and the assertion of a workers' compensation lien. Because recovery under uninsured motorist insurance is premised on the tortious conduct of another, the proceeds of that recovery, like the proceeds of an injured employee's third-party action, should be subject to a compensation lien.
[Midland, supra, 102 N.J. at 617, 510 A.2d 30 (citation omitted).]
This holding was in accord with the reasoning of our earlier decision in Montedoro v. City of Asbury Park, 174 N.J. Super. 305, 416 A.2d 433 (App.Div. 1980). We concluded in Montedoro that proceeds from the employer's uninsured motorist policy are subject to a workers' compensation lien. We focused on the predicate of the recovery, the negligence of the third-party tortfeasor, and held that the essence of a recovery under an uninsured motorist policy "is as compensation for the uninsured driver's common law liability." Id. at 308, 416 A.2d 433. We also noted that "[t]he insured's legal entitlement to damages for the uninsured driver's negligence imports into the UM policy all of the normal rules governing tort liability and damages." Id. at 308-09, 416 A.2d 433 (citation omitted).
The Midland court addressed the statutory construction issue as follows:
Arguably, as the Montedoro court found, the term `third person' in N.J.S.A. 34:15-40 could be construed to include an uninsured motorist. Nonetheless, the statute does not define `third person' to include an uninsured motorist or its carrier. Consequently, we base our decision on the belief that the primary concern of the Legislature here, as in other work-related injuries caused by third-party tortfeasors, is to integrate the sources of recovery.
[Midland, supra, 102 N.J. at 618, 510 A.2d 30 (citation omitted).]
*89 The Supreme Court reserved judgment on the question of whether a compensation lien attaches if the uninsured motorist coverage is less than the full amount of the employee's damages. Id. at 615-16, 510 A.2d 30; see Charnecky v. American Reliance Ins. Co., 249 N.J. Super. 91, 592 A.2d 17 (App.Div. 1991), aff'd o.b., 127 N.J. 188, 603 A.2d 512 (1992).
Appellant urges that our 1986 holding in Wausau Ins. Cos. v. Fuentes, supra, that a workers' compensation lien does not attach against legal malpractice proceeds related to third-party claims has been undermined by the Supreme Court's decision in Midland. In Wausau, we reasoned that
[a]pplying the rule that statutes in derogation of common law must be strictly construed, we hold that plaintiff's right of recovery goes no further than to payments actually made by the `third person' whose tortious conduct contributed to the happening of the industrial accident. The lawyer whose delinquency deprived the employee of a possible recovery from the machine manufacturer does not take on the identity of the statutory `third person.'
[Wausau Ins. Cos. v. Fuentes, supra, 215 N.J. Super. at 478, 522 A.2d 440 (citations omitted).]
However, in Midland, the Supreme Court rejected such a narrow interpretation of `third party,' and focused on the nature of the underlying act that produces the ultimate recovery. Midland, supra, 102 N.J. at 617, 510 A.2d 30. Unquestionably, the Midland court's interpretation of N.J.S.A. 34:15-40, when applied to an employee's recovery on a legal malpractice claim against an attorney for failure to prosecute a negligence claim against a third-party tortfeasor, compels a result contrary to our holding in Wausau Ins. Cos. v. Fuentes.
In Montedoro, we stated that
[t]he fundamental policy expressed in N.J.S.A. 34:15-40 is to limit an injured employee to that which the common law entitles him as long as that amount is greater than workers' compensation benefits for the same injury; it assumes such recovery to represent the most to which he is entitled.
[Montedoro, supra, 174 N.J. Super. at 310, 416 A.2d 433.]
There appears to us no reason why an injured employee who receives an award for injuries pursuant to a legal malpractice action should be placed in a better position than an injured *90 employee who recovers directly from the tortfeasor. Similarly, in Montedoro we observed that an employee should not be in a better position if he or she recovers under an uninsured motorist policy, rather than from an insured third-party tortfeasor. Id. at 308, 416 A.2d 433.
In 1987, when the Legislature enacted N.J.S.A. 2A:15-97, the collateral source rule, it specifically protected the funds necessary to satisfy the lien of N.J.S.A. 34:15-40 by excepting workers' compensation benefits from those benefits received from other sources that must be disclosed and offset, as a duplicate benefit, from any award recovered by a plaintiff in a personal injury action. If repayment is not made to the workers' compensation insurance carrier, this exclusion for workers' compensation benefits would result in a recovery to the plaintiff that would contravene the clear legislative policy against duplication of awards.
Frazier also argues that since NJM failed to pursue its own action against the third-party tortfeasor, as permitted under N.J.S.A. 34:15-40(f), NJM should not be allowed to assert a lien against the malpractice proceeds. We find no foundation for the premise that the employer or its insurer is obligated to timely pursue an action under 34:15-40(f) or lose its lien. Rather, the existence of such a right under the statute merely underscores the harm suffered by the workers' compensation insurance carrier as a result of the same attorney's malpractice in failing to take the required legal action on behalf of the injured worker. We are offered no sound reason for this court to create a bar to obtaining a compensation lien based on the insurance carrier's failure to pursue an action under 34:15-40(f). We conclude that because the legal malpractice settlement was predicated on the liability of a third-party tortfeasor, NJM's lien must attach to its proceeds. See Midland, supra, 102 N.J. at 617, 510 A.2d 30.
We have mentioned that the Chancery order also granted Frazier's motion to amend his complaint to allege the breach of certain obligations by NJM to Frazier and his employer. "[L]eave to amend a pleading before trial `should be freely given in the *91 interest of justice' without considering the merits of the amendment." City Check Cashing v. Nat'l State Bank, 244 N.J. Super. 304, 308, 582 A.2d 809 (App.Div.) (quoting R. 4:9-1), certif. denied, 122 N.J. 389, 585 A.2d 391 (1990). We do not disturb this portion of the order as we are confident that on remand the Chancery judge will consider the merits of the amendments, if any, at the appropriate time.
We reverse those portions of the orders and judgments of the Chancery Division and the Workers' Compensation Division that failed to honor the lien of the workers' compensation insurance carrier. In all other respects the orders and judgments are affirmed. We remand to the respective tribunals for further proceedings.
NOTES
[1] Our opinion in Wausau Ins. Cos. v. Fuentes, is dated June 13, 1986, two days after the June 11, 1986 decision of the Supreme Court in Midland Ins. Co. v. Colatrella. It is apparent, however, that the Supreme Court's opinion was not available to this court or counsel before the handing down of the Wausau Ins. Cos. v. Fuentes opinion.