667 A.2d 670

CHRISTOPHER FRAZIER, PLAINTIFF–APPELLANT, v. NEW JERSEY MANUFACTURERS INSURANCE COMPANY, AN INSURANCE COMPANY LICENSED IN THE STATE OF NEW JERSEY, DEFENDANT–RESPONDENT.

*Argued September 11, 1995—Decided December 1, 1995.*

*Hilton L. Stein* argued the cause for appellant (*Mr. Stein,* attorney; *Mr. Stein, David L. Doty, Arthur G. Schultzer,* and *Leonard A. Giusti,* on the briefs).

*Moira E. O'Connell* argued the cause for respondent (*McElroy, Deutsch & Mulvaney,* attorneys).

The opinion of the Court was delivered by GARIBALDI, J.

In this appeal, as in *Utica Mutual Ins. Co. v. Maran & Maran,* 142 *N.J.* 609, 667 *A.*2d 680 (1995), also decided today, the issue is whether, pursuant to *N.J.S.A.* 34:15–40, a workers' compensation lien attaches to the proceeds of a malpractice suit brought to recover damages from an attorney who failed to institute an action against the third-party tortfeasor responsible for the worker's injury.

I

In March 1987, plaintiff, Christopher Frazier, an electrician employed by Autotron Electric, Inc., was injured in a work-related accident. He fell down an open stairwell that lacked guardrails. In June 1987, Frazier's then attorney instituted a workers' compensation claim on his behalf against Autotron's workers' compensation carrier, defendant New Jersey Manufacturers Insurance Company (NJM). NJM accepted the claim and ultimately paid Frazier $150,000.

Sometime after his accident, Frazier made a formal complaint to the Occupational Safety and Health Administration (OSHA) against the general contractor (not his employer) concerning safety hazards at the job site. Subsequently, OSHA cited the general contractor for a lack of guardrails on the floor opening where Frazier had fallen and for other violations. Notwithstanding the OSHA citation, Frazier's former counsel failed to institute a third-party action on Frazier's behalf against the general con-

tractor. After the statute of limitations had run against the third-party tortfeasor, Frazier retained new counsel to sue his former attorney for malpractice for having failed to file a timely complaint against the third-party tortfeasor. Frazier's malpractice claim was settled in September 1992 for $675,000, an amount less than the policy limit of the malpractice insurance. Frazier claims that the malpractice award was inadequate to fully compensate him for his injuries.

In April 1992, during the legal malpractice suit and negotiations, Frazier's new workers' compensation attorney wrote to NJM to ascertain the total amount of workers' compensation benefits that NJM had paid to Frazier as of that date. In responding to Frazier's attorney's letter, NJM stated that it would file a lien against any recovery for legal malpractice. Frazier's attorney wrote back to NJM, stating that because any recovery would be against the former attorney for malpractice and not against the tortfeasor, NJM was not entitled to a lien against the recovery, citing *Wausau Insurance Cos. v. Fuentes*, 215 *N.J.Super.* 476, 522 *A.*2d 440 (App.Div.1986), *certif. denied*, 105 *N.J.* 542, 523 *A.*2d 181 (1986). In June 1992, NJM informed both Frazier's malpractice attorney and Frazier's former attorney that NJM would file a lien against any recovery for malpractice that Frazier might receive from the former attorney.

In February 1993, Frazier filed a complaint for declaratory judgment with the Superior Court of New Jersey, Chancery Division, contending that NJM's lien did not attach to the legal malpractice settlement. In April 1993, NJM filed an answer and counterclaim for a declaratory judgment establishing its right to deduct the lien from future payments of workers' compensation benefits payable to Frazier. In December 1993, both parties moved for summary judgment. Frazier also moved to amend his complaint to add claims that NJM had mishandled or was otherwise negligent in handling his workers' compensation claim. In January 1994, the Chancery Division granted Frazier summary

judgment on the lien issue, relying on *Wausau, supra.* The court also granted Frazier's motion to amend his complaint.

In March 1994, the Appellate Division granted NJM's motion for leave to appeal. In the same month, the Division of Workers' Compensation entered an order declaring that Frazier was totally and permanently disabled, and that NJM was not entitled to a lien on the malpractice recovery. NJM appealed that order, and the Appellate Division consolidated NJM's two appeals.

In September 1994, the Appellate Division reversed the trial court and compensation court on the lien issue and held that NJM's workers' compensation lien did attach to Frazier's legal malpractice settlement proceeds. 276 *N.J.Super.* 84, 647 *A.*2d 472 (1994). Subsequently, the Appellate Division denied Frazier's motion for reconsideration. Pursuant to *Rule* 2:2–2, we granted Frazier's motion for leave to appeal to this Court. 139 *N.J.* 2, 651 *A.*2d 472 (1994). We also granted Frazier's motion for a stay of the release of the malpractice proceeds to NJM, provided that he post a supersedeas bond.

The Appellate Division also affirmed the order granting Frazier leave to amend his complaint, and remanded the case for disposition of the issues raised in the amended complaint. Those issues are not before us.

## II

"The Workmen's Compensation Act, as enacted in 1911 [*L.*1911, *c.* 95], did not provide for the employer's recovery from the third person alleged to be responsible for the injuries sustained." *Johns–Manville Prods. Corp. v. Dronebarger,* 211 *N.J.Super.* 520, 524, 511 *A.*2d 1304 (Law Div.1986). Hence, an employee who recovered against a liable third party was entitled to keep 100% of the workers' compensation benefits, as well as 100% of any third-party recovery. "Thus, an injured employee was in some instances permitted a double recovery." *Ibid.*

To overcome the inequity of double recovery, the Legislature amended the Workers' Compensation Act in 1913 by adding *N.J.S.A.* 34:15–40 (section 40), (*L.*1913, *c.* 174, § 8). *Newark Paving Co. v. Klotz,* 85 *N.J.L.* 432, 91 *A.* 91 (Sup.Ct.), *aff'd* 86 *N.J.L.* 690, 92 *A.* 1086 (E. & A. 1914). With minor changes in 1931 (*L.*1931, *c.* 279, § 3), 1936 (*L.*1936, *c.* 162, § 1), 1951 (*L.*1951, *c.* 169, § 1), and 1956 (*L.*1956, *c.* 141, § 6), the 1913 amendment became codified in *N.J.S.A.* 34:15–40, which provides, in relevant part:

> Where a third person is liable to the employee ... for an injury ... the existence of a right of compensation from the employer or insurance carrier under this statute shall not operate as a bar to the action of the employee ..., nor be regarded as establishing a measure of damages therein. *In the event that the employee ... shall recover and be paid from the said third person or his insurance carrier, any sum in release or in judgment on account of his or its liability to the injured employee ... the liability of the employer under this statute thereupon shall be only such as is hereinafter in this section provided.*
>
> \* \* \* \* \* \* \* \*
>
> (b) *If the sum recovered* by the employee or his dependents from the third person or his insurance carrier *is equivalent to or greater than the liability* of the employer or his insurance carrier under this statute, *the employer or his insurance carrier shall be released from such liability and shall be entitled to be reimbursed, as hereinafter provided, for the medical expenses incurred and compensation payments theretofore paid to the injured employee or his dependents less employee's expenses of suit and attorney's fee as hereinafter defined.*
>
> (c) If the sum recovered by the employee or his dependents as aforesaid is *less than* the liability of the employer or his insurance carrier under this statute, the employer or his insurance carrier shall be liable for the difference, plus the employee's expenses of suit and attorney's fee as hereinafter defined, and shall be entitled to be reimbursed, as hereinafter provided for so much of the medical expenses incurred and compensation payments theretofore paid to the injured employee or his dependents as exceeds the amount of such difference plus such employee's expenses of suit and attorney's fee.
>
> [emphasis added.]

Thus, section 40 provides that an employee will be "guaranteed recovery for his common-law damages against contributing third-party tortfeasors or for his [workers'] compensation award, whichever is greater, but he may not duplicate these recoveries." *Schweizer v. Elox Div. of Colt Indus.,* 70 *N.J.* 280, 287, 359 *A.*2d 857 (1976). Hence, for every dollar of the employee's recovery

from the third party, the carrier's lien under section 40 (section 40 lien) entitles it to reimbursement of one dollar (less legal cost) of workers' compensation benefits. Otherwise, the tort recovery would be duplicating the workers' compensation benefits.

> ■ By application of established principles of statutory construction to *N.J.S.A.* 34:15–40, the legislative scheme which emerges is a plan to permit an injured worker to collect worker's compensation benefits and pursue his common law remedy against the third-party tortfeasor. *Subsection (b), however, obligates the employee or his dependents to reimburse the employer or its worker's compensation insurance carrier when the employee or his dependents recover from the third-party tortfeasor or his insurance carrier. The amount of the reimbursement is determined by reference to subsections (c), (d) and (e).*
>
> [*Danesi v. American Mfrs. Mut. Ins. Co.,* 189 *N.J.Super.* 160, 165, 459 *A.*2d 686 (App.Div.1983), *certif. denied,* 94 *N.J.* 544, 468 *A.*2d 194 (1983) (emphasis added).]

### III

Ordinarily, section 40 is invoked when an employee obtains a recovery from the third-party tortfeasor directly responsible for causing the injury for which the employee received workers' compensation benefits. However, in *Midland Ins. Co. v. Colatrella,* 102 *N.J.* 612, 510 *A.*2d 30 (1986), we recognized that Section 40 was not to be so rigidly confined and was to apply to recoveries that were the functional equivalent of a recovery from the actual third-party tortfeasor.

The employee in *Midland* sustained work-related injuries in an auto accident caused by the negligence of an unidentified hit-and-run driver. The employee received workers' compensation benefits from his employer's workers' compensation carrier as well as an uninsured motorist's award under his own insurance policy. The employee claimed that a section 40 lien attached only to recoveries directly from the third person. Holding that the workers' compensation carrier's section 40 lien did attach to the uninsured motorist's benefits, this Court observed:

> [I]n effect, an uninsured motorist provision is a contractual substitute for a tort action against an uninsured motorist. By comparison, the acts of the third-party tortfeasor produce the recovery to which the compensation lien attaches. *N.J.S.A.* 34:15–40. Thus, the tortious act of a third party is the predicate for both recovery

of uninsured motorist proceeds and the assertion of a [section 40] workers' compensation lien. Because recovery under uninsured motorist insurance is premised on the tortious conduct of another, the proceeds of that recovery, like the proceeds of an injured employee's third-party action, should be subject to a compensation lien.

[102 *N.J.* at 617, 510 *A.*2d 30.]

In holding that a section 40 lien attaches to proceeds from the employee's own uninsured motorist's policy, the Court relied on *Montedoro v. City of Asbury Park,* 174 *N.J.Super.* 305, 416 *A.*2d 433 (App.Div.1980). In *Montedoro,* the Appellate Division had held that a section 40 lien attaches to the proceeds of an uninsured motorist's policy purchased by the employer. That court properly recognized that

[a]n employee injured in a worker-related automobile accident by an insured tortfeasor cannot, under *N.J.S.A.* 34:15–40, retain both workers' compensation benefits and the fruits of the common law damage action against a third-party tortfeasor. We have been unable to conceive of any reason why the Legislature would have intended an employee-accident victim of an uninsured driver to fare better than an employee-accident victim of an insured driver, when the legislative effort has been in the other direction.

[*Id.* at 308, 416 *A.*2d 433.]

The *Montedoro* court concluded that, with respect to an uninsured-motorist-insurance recovery, "its essence is as compensation for the uninsured driver's common law liability." *Ibid.*

In *Midland* we based our holding on the fact that "in *N.J.S.A.* 34:15–40 the Legislature has expressed its intent that a compensation lien should attach to the recovery from a third-party tortfeasor." *Midland, supra,* 102 *N.J.* at 618, 510 *A.*2d 30. This Court in *Midland* acknowledged the narrow statutory definition of "third person." We noted that section 40

does not define "third person" to include an uninsured motorist or its carrier. Consequently, we base our decision on the belief that the primary concern of the Legislature here, as in other work-related injuries caused by third-party tortfeasors, is to integrate the sources of recovery.

[*Midland, supra,* 102 *N.J.* at 618, 510 *A.*2d 30.]

Frazier, however, relies on *Wausau, supra,* 215 *N.J.Super.* 476, 522 *A.*2d 440, on which the Chancery Division relied in granting Frazier summary judgment. Because this Court decided *Midland* only two days before the Appellate Division decided *Wausau,* the

Appellate Division in this case assumed that the *Wausau* court did not have the benefit of this Court's *Midland* opinion. 276 *N.J.Super.* at 87 n. 1, 647 *A.*2d 472. We note, however, in the case also decided today, *Utica Mutual Ins. Co. v. Maran & Maran*, 142 *N.J.* 609, 667 *A.*2d 680 (1995), the Appellate Division relied on *Wausau* in declining to find that a section 40 lien attached to malpractice proceeds.

In *Wausau*, the Appellate Division held that a workers' compensation lien cannot attach to legal malpractice recoveries. The court held that a workers' compensation carrier's

> right of recovery goes no further than to payments actually made by the "third person" whose tortious conduct contributed to the happening of the industrial accident. The lawyer whose delinquency deprived the employee of a possible recovery from the [third person-tortfeasor] does not take on the identity of the statutory "third person."
>
> [*Wausau, supra*, 215 *N.J.Super.* at 478, 522 *A.*2d 440.]

The *Wausau* court based its holding on the plain language of the statute (how it defines "third person") and on the rule that "statutes in derogation of common-law must be strictly construed." *Ibid.* In other words, section 40's requirement that the employee reimburse the workers' compensation carrier out of the third party recovery derogates from the employee's common-law right of recovery against the tortfeasor. Because section 40 does not plainly extend the reimbursement right to recoveries against third parties other than the tortfeasor, the *Wausau* panel determined that courts must construe section 40 strictly and not extend the right. In response to the workers' compensation carrier's contention that disallowing the lien on the malpractice recovery would result in double recovery for the employee, the court "conclude[d] that the remedy for this must be found with the legislature and not the judiciary." *Ibid.* As Frazier notes, although *Wausau* was decided almost 10 years ago, the Legislature has not amended the statute to show that *Wausau* incorrectly interpreted section 40.

In *Johns–Manville, supra*, 211 *N.J.Super.* 520, 511 *A.*2d 1304, decided two months before *Wausau*, the Law Division came to the opposite conclusion and held that a section 40 lien does attach to a

legal malpractice recovery. The Law Division acknowledged that section 40 involves "recovery against a third person liable for 'injury or death,'" and that "an attorney liable for malpractice cannot be considered such a person liable for injury or death." *Johns–Manville, supra,* 211 *N.J.Super.* at 525–26, 511 *A.*2d 1304. Nonetheless, the court found that such a literal reading was inappropriate because section 40 "reflects a very strong legislative determination that injured workers are not entitled to double recovery.... [S]ensible legislators would wish to bar double recovery in the present circumstances," in which the employee recovered not against the third-party tortfeasor but against the attorney who failed to sue the tortfeasor within the statute of limitations. *Id.* at 526, 511 *A.*2d 1304.

■ We agree. In order to recover against an attorney for missing the time-bar, a client must establish "the recovery which the client would have obtained if malpractice had not occurred." *Osborne v. O'Reilly,* 267 *N.J.Super.* 329, 331, 631 *A.*2d 577 (Law Div.1993). "[T]he measure of damages is ordinarily the amount that the client would have received but for his attorney's negligence. Such damages are generally shown by introducing evidence establishing the viability and worth of the claim that was irredeemably lost. This procedure has been termed a 'suit within a suit.'" *Gautam v. De Luca,* 215 *N.J.Super.* 388, 397, 521 *A.*2d 1343 (App.Div.) *certif. denied* 109 *N.J.* 39, 532 *A.*2d 1107 (1987) (citations omitted) (noting also that New Jersey has eschewed rigid application of "suit within suit" approach in favor of greater flexibility).

It was the tortious act of the third party (the general contractor) that was the predicate for Frazier's malpractice action against his former attorney. But for the third-party tortfeasor's tortious conduct, Frazier would not have recovered against his attorney. The Legislature did not intend such disparate treatment between a worker who recovers directly from the third-party tortfeasor and a worker who recovers from his attorney because of the third-party tortfeasor's same tortious conduct. No apparent justifica-

tion exists for allowing an injured employee who receives a legal malpractice recovery to be in a better position than an injured employee who recovers directly from the tortfeasor. Malpractice claims that are derivative of third-party claims are therefore subject to the workers' compensation lien under *N.J.S.A.* 34:15–40. We therefore overrule *Wausau.*

## IV

Frazier argues that even if we hold that the section 40 workers' compensation lien attaches to the proceeds of a legal malpractice recovery it only attaches if a worker is fully compensated for his injuries by way of the recovery from workers' compensation and his attorney in the malpractice action.

Frazier asserts that his legal malpractice recovery, together with his workers' compensation benefits, did not fully compensate him for his injuries. Therefore, he argues, the section 40 lien does not attach to the proceeds of his legal malpractice recovery.

■ There is no full compensation rule in the statute. When a plaintiff recovers from a third party, a lien attaches regardless of whether the cumulative awards are sufficient to fully compensate for all injuries. Indeed, *N.J.S.A.* 34:15–40(c) specifically provides for the situation where a third-party recovery is *less* than the compensated liability.

■ Section 40 prevents "double recovery," which, as the Appellate Division explained in *Montedoro,* occurs when the employee keeps *any* workers' compensation benefits that have been matched by recovery against the liable third person, even if the two combined would leave the employee less than fully compensated. *Montedoro, supra,* 174 *N.J.Super.* at 308, 416 *A.*2d 433. That view accords with the plain language of section 40 and is the procedure mandated when the employee recovers directly against the third person. Pursuant to subsection 40(c), the employee must reimburse the workers' compensation carrier for any amount received from the third person, and without regard to whether or

not the employee is fully compensated for the injuries. The legislative history of section 40 does not indicate that an employee had to be fully compensated for injury before the workers' compensation carrier was entitled to reimbursement out of the recovery against a liable third person. *Statement to Assembly Bill No. 178* (P.L. 1931, Chap. 279). The "double recovery" that the Legislature intended to prevent under section 40 is payment from two different sources for the same injury, and not payment in excess of the worker's "actual damages." As the Appellate Division found in *Laureano v. N.J. Transit Bus. Operations, Inc.*, 220 *N.J.Super.* 295, 299, 531 *A.*2d 1361 (App.Div.1987), *certif. denied,* 110 *N.J.* 176, 540 *A.*2d 174 (1988), the workers' compensation carrier may attach a lien to *"any payment"* the employee recovers from the tortfeasor, whether or not the recovery fully compensates the employee for the injuries.

> The Legislature did not intend for reimbursement to be in direct ratio to the amount of common-law damages recovered or collected from the third party tortfeasor. On the contrary, the Legislature provided that if the employee is paid "any sum" by the third-party tortfeasor or his or her carrier, the reimbursement lien attaches to that sum and the employer is to be reimbursed under *N.J.S.A.* 34:15–40(c) cases to the full extent of the payment less *N.J.S.A.* 34:15–40(e) deductions of up to one-third for attorneys fees and up to $200 in litigation expenses.

> [*Ibid.*]

In *Midland, supra,* 102 *N.J.* at 619, 510 *A.*2d 30, "we [did] not reach the more difficult question whether the workers' compensation lien should attach when the uninsured motorist coverage is less than the full amount of plaintiff's damages." In *Charnecky v. American Reliance Ins. Co.*, 249 *N.J.Super.* 91, 592 *A.*2d 17 (App.Div.1991), *aff'd o.b.* 127 *N.J.* 188, 603 *A.*2d 512 (1992), the Appellate Division faced the question that *Midland* had left unanswered. The plaintiff in *Charnecky* was injured in a work-related auto accident with a hit-and-run driver. He received $160,000 in workers' compensation from his employer's workers' compensation carrier and also made a claim under his own uninsured motorist policy. His uninsured motorist carrier tendered the policy limit of $100,000. The workers' compensation carrier asserted a section 40 lien against the uninsured motorist benefits.

Relying on *Midland*, the Law Division held that the lien attached. The Appellate Division reversed, finding that "[w]here an injured party's combined compensation and [uninsured motorist] recoveries do not indemnity him in full for his loss, the remedy fashioned in *Midland* to forestall a double recovery is inappropriate and unjust." *Charnecky, supra,* 249 *N.J.Super.* at 94, 592 *A.*2d 17. *Accord, Stabile v. N.J. Mfrs. Ins. Co.,* 263 *N.J.Super.* 434, 623 *A.*2d 252 (App.Div.1993) (citing *Charnecky,* section 40 lien attaches to underinsured motorist proceeds, but only if the employee would still be fully compensated); *Schaser v. State Farm Ins. Co.,* 255 *N.J.Super.* 169, 604 *A.*2d 687 (Law Div.1992), *aff'd,* 267 *N.J.Super.* 510, 631 *A.*2d 1283 (App.Div.1993), (citing *Charnecky,* section 40 lien attaches to uninsured motorist proceeds only if employee fully compensated).

The Appellate Division in *Charnecky* offered several justifications for its holding. Primarily the *Charnecky* court relied on 2A Larson, *Workmen's Compensation Law* § 71.23(h) 14–37 (1990). *Charnecky, supra,* 249 *N.J.Super.* at 95, 592 *A.*2d 17. Larson explains that the assumption underlying compensation liens in most states is that the third-party recovery typically covers all of the plaintiff's loss, so that the employee's retention of the workers' compensation benefit would result in "double recovery" in the sense of "exceeding actual loss"; Larson contends that because of low policy limits, this assumption should not apply in the uninsured motorist context and no lien should attach. That predicate assumption, however, does not underlie New Jersey section 40 liens, because—at least when the recovery comes directly from the third person-tortfeasor—section 40 clearly affords the workers' compensation carrier a right of reimbursement even if the result is that the employee is not fully compensated.

We perceive no reason why the "no double recovery" rule should be different when the third-party recovery is against a party other than the tortfeasor. The *Montedoro* court, addressing facts in which the employee had received uninsured motorist benefits rather than a recovery directly against the tortfeasor,

found "[n]othing in the situation ... [to] suggest[ ] why the same relationship between employer and injured employee should not obtain here." *Montedoro, supra,* 174 *N.J.Super.* at 310, 416 *A.*2d 433. In other words, it found no basis for concluding that the "no double recovery" rule should operate differently when the recovery is against a party other than the tortfeasor. The workers' compensation carrier is entitled to reimbursement whether or not the employee is fully compensated, and the application of that rule does not depend on whether the third-party recovery was directly against the tortfeasor.

■ We hold that any proceeds, whether recovered from the direct third-person tortfeasor or from a functionally equivalent source—uninsured motorist insurance proceeds or legal malpractice proceeds—are subject to section 40 liens, and the same "no double recovery" rule applies for both recoveries. Recoveries that are not directly from the tortfeasor are subject to a lien even when the employee is not fully compensated. We therefore overrule *Charnecky.*

## V

Frazier also contends that NJM relinquished any claim it might have to any third-party recovery by failing to pursue its own suit against the contractor-tortfeasor under section 40(f). That section permits an employer or carrier to file a third-party claim but does not mandate such a suit. Frazier cites the Appellate Division's notation of the fact that the workers' compensation carrier in *Wausau* did not avail itself of its section 40(f) remedy. *Wausau, supra,* 215 *N.J.Super.* at 478, 522 *A.*2d 440 (disallowing workers' compensation carrier's lien against legal malpractice recovery). Aside from *Wausau,* there is no case law to support this argument.

NJM properly counters that "[n]othing in the Act makes the validity of a lien contingent upon filing a claim pursuant to § 40(f)." The opinion below found "no foundation for the premise that the ... [WC carrier] is obligated to timely pursue an action

under 34:15–40(f) or lose its lien." 276 *N.J.Super.* at 90, 647 *A.*2d 472. That interpretation is consonant with the plain language of section 40: the workers' compensation carrier's right to reimbursement from the employee under subsections 40(b) and 40(c) is not contingent on the workers' compensation carrier's exercise of the subsection 40(f) remedy.

## VI

Finally, Frazier claims that if this Court holds that a section 40 lien does attach to legal malpractice recoveries, that would constitute a change in the law significant enough to warrant applying the holding only prospectively, and not to the parties in the present case. We disagree.

Generally, judicial decisions are applied retroactively to all civil matters that have not reached final judgment. *Chase Manhattan Bank v. Josephson,* 135 *N.J.* 209, 235, 638 *A.*2d 1301 (1994); *County of Essex v. Waldman,* 244 *N.J.Super.* 647, 662, 583 *A.*2d 384 (App.Div.1990), *certif. denied,* 126 *N.J.* 332, 598 *A.*2d 890 (1991). Nonetheless, this Court "accord[s] ... rulings prospective effect in cases where the interests of justice mandate such an approach." *N.J. Election Law Enf. Comm'n v. Citizens to Make Mayor–Council Gov't Work,* 107 *N.J.* 380, 387, 526 *A.*2d 1069 (1987). In deciding retroactivity issues arising in civil proceedings, a court must consider three questions. First, as a threshold question, does the decision constitute a new principle of law? If not, the decision will have full retroactive effect. *State v. Burstein,* 85 *N.J.* 394, 403, 427 *A.*2d 525 (1981). Second, what is the purpose of the new rule, and would retroactive application further that purpose? Third, would retroactive application be unfair to those who *reasonably* relied on the old rule? *Montells v. Haynes,* 133 *N.J.* 282, 295, 627 *A.*2d 654 (1993); *N.J. Election Law Enf. Comm'n, supra,* 107 *N.J.* at 389, 526 *A.*2d 1069.

Frazier claims that it was settled law that section 40 liens do not attach to legal malpractice recoveries and that he relied on that settled law. He has not, however, suggested any factual support

for the assertion that he relied on the "old rule." Moreover, although *Wausau* has remained good law for almost ten years, the *Midland* ruling, as well as the conflicting decisions of Appellate Division on this issue, render any reliance unjustified and therefore insufficient to overcome the presumption of retroactive application. *See N.J. Election Law Enf. Comm'n, supra,* 107 *N.J.* at 390–91, 526 *A.*2d 1069; *Mirza v. Filmore Corp.,* 92 *N.J.* 390, 399, 456 *A.*2d 518 (1983).

## VII

In conclusion, we find that a workers' compensation lien pursuant to *N.J.S.A.* 34:15–40 attaches to the proceeds of a legal malpractice action brought to recover damages from an attorney who failed to institute an action against a third-party tortfeasor. We therefore overrule *Wausau,* 215 *N.J.Super.* 476, 522 *A.*2d 440. We further hold that Section 40 imposes a lien on third-party recoveries that are the functional equivalent of a recovery against the direct tortfeasor, regardless of whether the worker has been fully compensated for his injuries. We therefore overrule *Charnecky, supra,* 127 *N.J.* 188, 603 *A.*2d 512.

We also determine that an insurance carrier need not institute a suit against the third-party tortfeasor to secure a section 40 lien. Finally, we apply these holdings retroactively.

We affirm the judgment of the Appellate Division and remand the matter to the trial court for a consideration of the issues raised in the amended complaint.

O'HERN, J., concurring.

I concur in the judgment of the Court that an equitable lien akin to the statutory workers' compensation lien attaches to the proceeds of a malpractice suit premised on the failure of the worker's attorney to prosecute a viable third-party action against a tortfeasor responsible for the worker's injuries. I find nothing in this record to warrant a suspension of enforcement of the equitable

remedy as in *Charnecky v. American Reliance Ins. Co.*, 249 *N.J.Super.* 91, 592 *A.2d* 17 (App.Div.1991), *aff'd o.b.*, 127 *N.J.* 188, 603 *A.2d* 512 (1992). In *Charnecky* the Court held that, before enforcing the equitable lien fashioned in *Midland Ins. Co. v. Colatrella*, 102 *N.J.* 612, 510 *A.2d* 30 (1986) that attached to the proceeds of an uninsured motorist claim, a court should consider whether there was, in fact, a double recovery.

I disagree with the opinion of the Court in this case insofar as it now overrules that aspect of *Charnecky*. The judicial remedy fashioned in *Midland* to forestall a double recovery is and remains inappropriate and unjust when there is *no double recovery*. Ordinarily, in an attorney malpractice case there is a suit within a suit and (if the malpractice is as plain as here when the attorney misses a statute of limitations) the worker recovers all that he or she would have recovered in the first instance. Hence, it is fair to view such a case as a double recovery. The worker recovers all sums due for the injuries incurred—injuries for which he or she had been previously compensated. Not so in the circumstance of *Charnecky* when the recovery was, by its very nature, limited. It is unfair to deprive parties such as Charnecky, without so much as a hearing, of the benefits of the self-insurance that they had prudently obtained. Law should not penalize the prudent but, rather, prevent an imprudent grab at a double recovery.

STEIN, J., concurring.

I agree with the Court's disposition of this appeal but not with its reliance on *Midland Insurance Co. v. Colatrella*, 102 *N.J.* 612, 510 *A.2d* 30 (1986). The Court correctly concludes that for purposes of the workers' compensation lien authorized by *N.J.S.A.* 34:15–40, an employee's malpractice recovery from the lawyer that negligently failed to prosecute the employee's third-party action should be subjected to the lien to the same extent as the employee's recovery from the third party would have been. As the Court observes, "[n]o apparent justification exists for allowing an injured employee who receives a legal malpractice recovery to be in a

better position than an injured employee who recovers directly from the tortfeasor." *Ante* at 601–02, 667 A.2d at 676.

The same irrefutable logic cannot apply to enforcement of the lien against the employee's recovery from his or her own automobile policy, the source of that recovery being an insurance policy paid for by the employee, and the amount of uninsured motorist benefits—and hence the amount of the lien—depending entirely on how much uninsured motorist coverage the employee elected to buy. Recognition of the compensation lien in that circumstance may prevent a so-called "double recovery," but in the process it permits the compensation carrier to pick the pocket of the employee who paid for the uninsured motorist coverage. As I observed in *Midland, supra,* 102 *N.J.* at 622, 510 *A.*2d 30 (Stein, J., dissenting), if the lien authorized by *N.J.S.A.* 34:15–40 is to apply to an employee's recovery of uninsured motorist benefits from his or her own policy, the Legislature should make that determination explicitly.

O'HERN and STEIN, JJ., concur in the result.

*For affirmance and remandment*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, GARIBALDI and COLEMAN—5.

*Opposed*—None.