179 N.J. Super. 362 (1981)
432 A.2d 122
WALTER B. COTTON, PLAINTIFF,
v.
FRANK TRAVALINE, SUBSTITUTED ADMINISTRATOR FOR THE ESTATE OF FRANK E. VITTORI, AND MICHAEL J. PIARULLI, DEFENDANTS. and FRANK TRAVALINE, SUBSTITUTED ADMINISTRATOR FOR THE ESTATE OF FRANK E. VITTORI AND MICHAEL J. PIARULLI, THIRD-PARTY PLAINTIFFS-RESPONDENTS,
v.
GENERAL ACCIDENT GROUP, THIRD-PARTY DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 19, 1981.
Decided June 17, 1981.
*365 Before Judges FRITZ, POLOW and JOELSON.
*366 J. Robert McGroarty argued the cause for appellants.
Clifford Long argued the cause for respondents (Charles H. Nugent, attorney).
The opinion of the court was delivered by POLOW, J.A.D.
In this appeal third-party defendant General Accident Group (GAG) attacks two interlocutory summary judgment orders. After entry of those orders, which resolved all issues except damages, the carrier, GAG, paid $60,000 to settle plaintiff Cotton's legal malpractice claim against the insured law firm, Piarulli and Vittori. Neither in its perplexing brief nor in oral argument on this appeal does GAG question the validity of the settlement. Plaintiff Cotton, who received the proceeds, has not participated in the appellate process.[1] Appellant apparently seeks a determination that the two interlocutory summary judgment orders adjudicating coverage under the malpractice policy and adjudicating malpractice liability as a matter of law were erroneously granted by the trial court. We are satisfied that no relief of any kind is available to appellant in light of its absolute and unconditional settlement of the original malpractice claim. The settlement effectively forecloses adjudication of the amount of damages recoverable, if any, in the underlying tort claim. Furthermore, the complete absence of any demand by appellant for affirmative relief of any kind in the pleadings, the pretrial documents or any supplements or amendments thereto leaves nothing else to be adjudicated following the settlement of plaintiff's claim "with prejudice."
In June 1965, plaintiff Cotton had sustained personal injuries as the result of an automobile accident. He retained Frank E. Vittori, a member of the law firm of Piarulli and Vittori, to *367 pursue his claim for damages. Although suit was instituted, apparently within a reasonably short time thereafter, it was dismissed for technical reasons in March 1966 but refiled again before expiration of the statute of limitations. The confused and incomplete record on appeal contains little specific information or documentation with regard to the dates of filing or reasons for that original dismissal. However, it is clear that the new action was not prosecuted properly, there were several motions to dismiss for failure to answer interrogatories and the second suit was finally dismissed for that reason on December 9, 1970. No further action has ever been taken, in that suit.[2]
After Vittori's death on December 12, 1971 his law partner, defendant Piarulli, immediately notified his insurance agent that "there are several matters which could very well result in claims being made against us under our professional liability policy." He requested that the insurance company, GAG, be notified in order that a meeting could be arranged. Thereafter, under date of April 27, 1972, about four months after Vittori's death, Piarulli wrote directly to GAG listing approximately ten case names and file numbers, including plaintiff's, which represented "potential malpractice suits." GAG concedes that a member of its group, the Camden Fire Insurance Association, issued a lawyer's professional liability policy to Piarulli and Vittori which provided malpractice coverage for a three-year period, between February 5, 1969 and February 5, 1972. In an affidavit submitted to the trial court, claims adjuster Don Phifer asserts that there were discussions regarding many of those matters during an extended period of time. Apparently some of the claims were duly investigated and adjusted by the insurance company. However, Phifer suggests that since the Cotton accident *368 had occurred on June 18, 1965, his malpractice claim was not within the time during which GAG provided insurance coverage and, presumably, it was therefore not investigated.
In a letter dated October 28, 1976, GAG acknowledged a communication from Piarulli concerning the Cotton malpractice claim "of major proportion." In GAG's response it attempts to distinguish between notification of "a potential claim" which "might arise in this case," as reported in Piarulli's April 27, 1972 letter, and "an actual claim," thereby suggesting that the April 1972 letter does not constitute "notice" in accordance with policy provisions. Hence, serious prejudice was claimed as a result of "late" notice of claim in that the company could not then develop information as to what, if any, insurance may have existed with respect to the loss in question. GAG further maintained therein that if the defendant in Cotton's automobile accident suit had been uninsured and judgment proof, "there may have been no malpractice whatsoever ... and even if there was malpractice ... the claimant would have suffered no loss."
Cotton then instituted his malpractice suit against Piarulli, the surviving partner, and Vittori's estate. Although the documents in appellant's appendix contain no dates, (contrary to R. 2:6-1(b)), the complaint was apparently filed in or about December 1976. Here again, the record contains no specific information as to whether or how the complaint was submitted to GAG, but it is obvious that the insurer was aware of it and refused to defend. Answers were filed by both defendants. In June and July 1977, both defendants, by way of third-party complaints, asserted claims against GAG as third-party defendant for a declaration of insurance coverage for the Cotton malpractice claim and for attorney's fees and costs. GAG answered in both cases, setting up by way of affirmative defense the allegation that both third-party plaintiffs "breached the terms of any policy ... issued...." Although GAG now seeks to recover the $60,000 it paid in settlement, there was nothing in the pleadings before the court then, nor is there now, asserting a *369 counterclaim by GAG for money damages, indemnification reimbursement or any other affirmative relief.
Upon applications by the Vittori estate and Piarulli, summary judgment was granted adjudicating existence of insurance coverage for the Cotton claim under the professional liability policy in question. The trial judge found as a matter of law that the negligent acts alleged by Cotton occurred during the period of policy coverage and that there was no genuine factual issue regarding compliance by the assureds with notice requirements and other policy coverage preconditions.
Appellant argues that the summary judgment adjudicating coverage was erroneously and improvidently granted because, at the time, there were pending motions before the court by the Vittori estate and Piarulli to vacate the 1970 dismissal of Cotton's automobile accident suit. Those motions had been made in the malpractice action in November 1977, to vacate a dismissal in the entirely separate and distinct suit involving the underlying 1965 accident claim for damages for personal injuries. The Defendant in that suit was not a party to the malpractice action and had no notice of the application to vacate the dismissal entered in 1970. The argument that the judge should have ruled on those motions is frivolous. The judge lacked jurisdiction to deal with a matter not before him and in which there was no such application pending, to say nothing of the lack of notice to the other party involved. But, since there is no technical, formal disposition of those motions we deem it appropriate to exercise our original jurisdiction, R. 2:10-5, to resolve this issue. We deny the motions to vacate the 1970 dismissal and to reinstate the underlying automobile accident case. The delay of seven years between the dismissal and the motions to vacate it mandates a denial of the motions in any event.
Although we are fully satisfied, for reasons stated hereinafter, that the propriety of the summary judgment with regard to coverage was rendered absolutely moot by GAG's voluntary *370 settlement, nevertheless we have reviewed the record before the trial judge and his determination based thereon. The summary judgment adjudicating coverage was entirely appropriate, substantially for the reasons expressed by the trial judge in his oral opinion of April 18, 1978.
Appellant also attacks as erroneous the determination, on Cotton's application by way of partial summary judgment, that the clearly and undisputedly negligent conduct of the insured law firm during the period of coverage constitutes malpractice, although the damage issue was bifurcated and reserved for plenary trial. GAG argues that until there is a finding that plaintiff would have been successful in his underlying automobile accident case, there can be no malpractice. Relying exclusively upon our decision in Hoppe v. Ranzini, 158 N.J. Super. 158 (App.Div. 1978), and "the trial within a trial" concept, appellant urges that there can be no malpractice adjudication unless and until liability has been established on the underlying claim. We disagree.
The degree of confusion in the presentation of this appeal is highlighted by appellant's demand that the summary judgment in favor of plaintiff on malpractice liability be vacated. Its appellate briefs fail to identify the parties against whom the appeal is aimed. Although partial summary judgment adjudicating malpractice liability as a matter of law was granted on plaintiff Cotton's motion, he has not participated in this appeal. That apparently does not concern appellant since appellant has agreed that the settlement was made voluntarily and with prejudice. In fact, Piarulli, referred to in his appellate brief as plaintiff-appellee, is the only potential respondent who has participated on appeal. In its briefs, appellant seems to direct its attack against Piarulli.
Notwithstanding that confusion, we are fully satisfied that, under the circumstances here presented, the trial judge correctly found malpractice as a matter of law, irrespective of the merits of or collectibility on plaintiff's personal injury claim. *371 In Hoppe defendants sought "a rule that would require proof of collectibility ... in order to determine the amount of damages" in the malpractice action. Id. at 167 (emphasis supplied). We fully agree that the liability issue with regard to the underlying accident case as well as collectibility of any award therein is essential to a determination of the amount of damages flowing from counsel's malpractice in failing to properly prosecute the claim. Still, the manner in which a malpractice suit should properly proceed, including whether the malpractice issue should be bifurcated from damages, is within the sound discretion of the trial court. Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 343 (1980).
Here summary adjudication of the malpractice issue as a matter of law was clearly appropriate and not precluded. GAG was expected to test the issues of underlying liability and collectibility on the personal injury claim within the trial on damages. Id. at 342; Hoppe v. Ranzini, supra, 158 N.J. Super. at 170-171. This it chose not to do. To the contrary, GAG voluntarily agreed with plaintiff to pay $60,000 in full settlement and thereupon executed a dismissal of the malpractice complaint with prejudice. It thereby foreclosed itself from any opportunity to test the liability of the other party involved in plaintiff's automobile accident claim and the collectibility of any damages flowing therefrom. Cf. Burke v. Central R. Co. of N.J., 42 N.J. Super. 387, 396 (App.Div. 1956). There is nothing left in this action to be litigated. Mayflower Industries v. Thor Corp., 17 N.J. Super. 505, 509 (Ch.Div. 1952), app. dism. 20 N.J. Super. 39 (App.Div. 1952).
We are unimpressed by appellant's continued insistence that it has preserved some claim against the third-party plaintiffs because of Piarulli's approval, in some manner, of the settlement. Whether or not the third-party plaintiffs were aware of GAG's ultimate intention to attempt to press a claim against Piarulli or Vittori's estate, or both, for indemnification or for noncooperation or lack of adequate notice, nonetheless the *372 assureds were still secure in the knowledge that there had never been asserted against them an affirmative claim of any nature whatever. But cf. Pappas v. Santiago, 66 N.J. 140 (1974).
We note substantial irrelevant argument in the appellate briefs on the appealability of the summary judgments granted by the trial court as final adjudications of coverage and malpractice liability. Although GAG was free to seek leave to appeal from either or both of those summary judgments, R. 2:2-4, it did not do so. Hence, we may only speculate as to whether such applications would have been granted. Still, GAG's attack on those adjudications would, unquestionably, have been timely within an appeal from a final judgment following trial of any remaining contested affirmative claims, resolving all such issues as to all parties. R. 2:2-3(a); Delbridge v. Jann Holding Co., 164 N.J. Super. 506, 509 (App.Div. 1978); Girard v. Alverez, 144 N.J. Super. 259, 261 (App.Div. 1976).
However, no such trial eventuated. GAG's voluntary resolution by settlement with plaintiff Cotton disposed of all remaining affirmative claims and rendered its attack on the summary judgments adjudicating coverage and malpractice liability purely academic. If there had been no coverage, the insurer should not have settled. 44 Am.Jur.2d, Insurance, § 1545 at 425. Had GAG not so eagerly grasped the opportunity to settle Cotton's malpractice claim for $60,000 with prejudice, it would have preserved the right to test those issues. See Mayflower Industries v. Thor Corp., supra. Cf. Burke v. Central R. Co. of N.J., supra.
As previously noted, there is no affirmative claim of any nature which has been asserted by way of any pleading or amendment or supplement thereto for damages, reimbursement indemnification or any other affirmative relief by GAG against its insured. There is no legal theory or concept to support appellant's attempt to transform an affirmative defense into an affirmative right of recovery.
*373 Consent to the settlement by the assured does not give rise to an obligation to indemnify merely because the carrier has consistently denied coverage and refused to defend. Nor do affirmative defenses stated in response to a suit to compel coverage create an affirmative right to indemnification under the circumstances. Cf. Adler's Quality Bakery Inc. v. Gaseteria, Inc., 32 N.J. 55, 80 (1960); Cola v. Packer, 156 N.J. Super. 77, 81 n. 2 (1977). Any ambiguity created by the voluntary act of the carrier after implicit or express approval by the insured must be resolved in favor of the insured. Bryan Constr. Co., Inc. v. Employers' Surplus Lines Ins. Co., 60 N.J. 375 (1972).
Affirmed.
NOTES
[1] It is not clear whether appellant intended to include plaintiff and the Vittori estate as respondents in addition to Piarulli. Although the notice of appeal was addressed to all three, only Piarulli is identified as "appellee."
[2] We emphasize that no further action was taken "in that suit" because there was a peculiar motion made in November 1977, in the malpractice action from which this appeal is taken, to vacate the dismissal of the previous automobile accident suit. The record on appeal discloses no such application having been made in the automobile accident suit nor notice of any kind to the other party thereto.