721 A.2d 750 (1999)
ALBEE ASSOCIATES, a Limited Partnership and GAC Enterprises, Inc., Plaintiffs-Appellants,
v.
ORLOFF, LOWENBACH, STIFELMAN AND SIEGEL, P.A., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued December 16, 1998.
Decided January 11, 1999.
*751 Dore R. Beinhaker, for plaintiffs-appellants (Mr. Beinhaker, on the brief).
Francis X. Crahay, Newark, for defendant-respondent (Tompkins, McGuire & Wachenfeld, attorneys; Robert Leonardo, Elizabeth, on the brief).
Before Judges BAIME, CONLEY and A.A. RODRIGUEZ.
The opinion of the court was delivered by CONLEY, J.A.D.
This legal malpractice action arises from defendant law firm's representation of plaintiffs in a federal district court civil fraud action that the law firm filed for plaintiffs. Along the way, it failed to timely file a complaint for non-dischargeability in a Chapter 7 bankruptcy proceeding filed by one of the defendants in the underlying suit, Aldo Medaglia. Default judgment in the amount of $1,545,120 has been obtained against the other defendants in that suit. However, as to Mr. Medaglia, the firm's failure to timely file a nondischargeability claim has, seemingly,[1] led to a discharge of plaintiffs' fraud claims against Medaglia in the bankruptcy action. Plaintiffs now appeal a summary judgment granted on the basis of the alleged noncollectibility of a judgment that might have been obtained against Medaglia in the federal suit. We reverse.
As we have said, the law firm's failed efforts to obtain a nondischargeability ruling in Medaglia's bankruptcy proceeding concerned plaintiffs' cause of action against Medaglia in their federal district court civil *752 action against a number of defendants, only one of which was Medaglia. That complaint asserted fraud, conversion, federal and state RICO violations, and other related causes of action against Medaglia, Leonard Fritzson, Mark Hamor, Jeffrey Katz, Joseph Maggio and Metrobrook, Inc. (hereinafter federal defendants), arising out of plaintiffs' unsuccessful $500,000 investment with these defendants in a flea market located in Brooklyn, New York.
The investment occurred under the following circumstances. In June of 1989, the federal defendants began soliciting monies from representatives of plaintiffs for investment in an entity known as Metrobrook, Inc. Metrobrook was a New York corporation which operated the subject flea market. During negotiations, the federal defendants allegedly represented to plaintiffs that they, collectively, were equal shareholders in another corporation, Naphill Enterprises, Inc., which owned an additional flea market located in Queens, New York. It was represented both verbally and in writing that the Brooklyn flea market would be guaranteed and secured by Naphill and the Queens flea market.
These representations, plaintiffs have asserted, were critical to their agreement to invest the money and, unfortunately for them, turned out to be false. After plaintiffs entered into a sales agreement pursuant to which they paid $500,000 for ten percent of the outstanding shares of Metrobrook and which contained the representations as to Naphill and the Queens flea market[2], it was discovered that Naphill Enterprises did not in fact own the Queens flea market. Rather, plaintiffs learned that a different corporation, of which Medaglia was the sole shareholder, owned the Queens flea market and also that Medaglia was the only other shareholder, besides the plaintiffs, in the ownership of the Brooklyn flea market. None of the other federal defendants owned shares in either venture. Plaintiffs also learned that the Brooklyn flea market was not in fact guaranteed by the Queens flea market and that Metrobrook was substantially in arrears with regard to the lease of the Brooklyn flea market location. Eventually, the Brooklyn flea market venture failed and plaintiffs lost most of their investment monies. Ultimately, plaintiffs were able to obtain a default judgment against most of the other federal defendants in the amount of $1,545,120.09.[3]
The facts that form the basis for plaintiffs' legal malpractice claim are as follows. The federal district court complaint was filed in September 1990. In December 1991, Medaglia filed a petition for bankruptcy relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 et seq. However, plaintiffs did not receive formal notice of the bankruptcy action because Medaglia's petition did not list plaintiff Albee Associates as a creditor, and the address given for plaintiff GAC Enterprises was insufficient.
The bankruptcy court issued an order that set April 10, 1992 as the "bar" date for any complaints objecting to discharge of debts or to determine the dischargeability of certain debts. Prior to this date the law firm came to learn about the bankruptcy proceeding and in February 1992, sent a letter to Medaglia's bankruptcy attorney requesting that plaintiffs be included on the list of creditors.
The firm did not, however, file an adversary proceeding contesting the nondischargeability of plaintiffs' claims against Medaglia prior to the bar date of April 10, 1992. The parties differ on the reason. Plaintiffs argue that it was caused by simple lack of diligence. The law firm, however, asserts that the decision not to file a complaint was based on its interpretation of a split of authority on the notice provisions under Bankruptcy Rule 4007 and § 523(a)(3) of the Bankruptcy Code, concerning whether known creditors are bound by the passing of a "bar" date if they did not have formal notice of same, which the law firm did not receive.
The firm did eventually file an adversary proceeding in the bankruptcy court in August 1992 seeking to have the claims against Medaglia declared nondischargeable pursuant *753 to § 523(a)(2) and (a)(6) of Title 11 of the Bankruptcy Code, since those claims were based on fraud. As we have said, that adversarial proceeding was ultimately dismissed by summary judgment on the ground that it was time-barred as of April 10, 1992. The dismissal eventually was affirmed by the Court of Appeals.
The summary judgment before us arose in the context of a motion for summary judgment on the part of plaintiffs as to the law firm's liability for the alleged malpractice. That motion was denied. The motion judge found that, based on the expert reports submitted by the law firm, there was at least a factual question as to whether the law firm had reasonably relied on a split in authority regarding whether a creditor who did not receive formal notice of the bankruptcy petition and the "bar" date was bound thereby, or whether the firm had simply neglected to file a timely complaint to protect plaintiffs' interests. The materials submitted, if viewed most favorably to the law firm, provide a basis for this determination.
But the law firm's cross-motion is another matter. In its cross-motion, the firm sought summary judgment and dismissal of the complaint on two grounds: 1) that a judgment in the federal suit would, in any event, be noncollectible, and 2) that plaintiffs could not prove that their federal claims against Medaglia would have been nondischargeable. Since the summary judgment before us was granted on the basis of the noncollectibility issue, we focus on that.
The evidential basis for the noncollectibility aspect of the motion, as presented by the law firm, was information concerning Medaglia's assets, or lack thereof, as discovered by two asset examiners hired by the law firm and an "expert report" by Bunce Atkinson, an attorney. In that report, Mr. Atkinson opines:
Even assuming plaintiffs were successful in a non-dischargeability Complaint, it does not appear that Plaintiffs would be able to collect on account of their judgment. A review of the documentation submitted indicated that Mr. Medaglia owned his home as a tenant-by-the-entirety with the liens exceeding the market value. Subsequent to his bankruptcy in 1991, Mr. Medaglia has not acquired assets in his own name as evidenced by the various searches. If a judgment for non-dischargeability had been entered against him, it is my opinion that Mr. Medaglia would not have placed any assets in his own name. Moreover, I note that according to the Petition, he owed money to the State of New York and the IRS as priority creditors, both of whose claims would not have been discharged. According to the Petition, the IRS was owed $62,600.00, and the State of New York was owed $16,000.00. These debts were not discharged. Two judgments were entered against Mr. Medaglia following his discharge in bankruptcy, a judgment of the Turnpike Association for $70,200.00, and a judgment by a Bank for $32,900.00. Both of these apparently remain of record indicating an inability of the creditors to collect on their judgments. Additionally, it appears as if the IRS filed a tax lien for $44,700.00, which would be a lien on all personal and real property owned by Mr. Medaglia.[4]
As to the asset searchers, one of them, Frank Nappi, stated in an undated certification that:
As per your request the following investigations have been closed for at least *754 one of the following reasons: No longer in Business; no account under name(s) provided, or we were unable to locate the business or individual.
* We were unable to locate any Bank Accounts under Mr. Medaglia's S.S. No.
* We also tried to locate stocks and bonds under the above to no avail.
* Also we could not locate whether he was employed.
* Our search found no assets for the above individual.
The certification provides little except that no assets could be found, not that they do not exist. Moreover, not being able to locate employment is not a factual assertion that Medaglia is not employed.
The second asset searcher, Terry Gilbeau, stated in a May 27, 1997 certification:
A search of public record information, which typically includes suits, judgments, tax liens, bankruptcies, etc., revealed that Aldo Medaglia has liabilities totalling approximately $802,420.00.
There was no real estate ownership found. Accordingly, based on information received, it would appear that the subject does not own any real property at this time.
A bank account search was initiated, specifying a minimum average monthly account balance of $4,000, in an effort to identify any current banking relationships. Unfortunately, no positive information was returned as a result of this search, which would tend to indicate that the subject does not maintain any material bank balances at this time.
Presumably, however, the $802,420 debt became part of the bankruptcy proceeding. Moreover, a bank account search limited to discovering accounts with a minimum average monthly balance of $4,000 would not rule out the possibility of maintaining multiple accounts with average balances less than that figure which, in the aggregate, could be evidence of gainful employment.
Plaintiffs deposed Gilbeau prior to the motion for summary judgment and have, in their supplemental appendix, provided us with portions of that deposition. We can not tell whether this was presented to the motion judge. We think, nevertheless, it is important to consider, as it is reflective of substantial deficiencies in the search as highlighted by the following:
Q. ... Okay I think I'm done, but I just want to understand what happened here, so correct me if I'm wrong.
A. Sure.
Q. You were retained, and you are not certain when, but we agree it was prior to you signing this certification that has been marked as P-22?
A. That is correct, that is the final.
Q. Okay. And you contacted this company in California?
A. That's right.
Q. You gave them Mr. Medaglia's name as Aldo Medaglia which is spelled, to the best of your recollection, as set forth in Paragraph A or?
A. Correct.
Q. You gave them his Social Security number, which you don't recall today?
A. Correct.
Q. And you gave them his address of somewhere in New Jersey?
A. Correct.
....
Q. And you do not recall providing any other additional information to this company in California?
A. No, sir.
Q. You have no records whatsoever?
A. No sir.
Q. And you don't have the response that you received back from them?
A. No, sir.
Q. And, as you sit here today, you don't know whether he is employed or unemployed, Aldo Medaglia?
A. Correct.
Q. You don't know whether he has assets or doesn't have assets?
A. Well, as far as our report is, he does not have assets.

*755 Q. Well, you know that Derringer, or whatever the company was, couldn't find any assets, is that accurate?
A. That is correct.
Q. But you don't know as of today whether Mr. Medaglia has any assets?
A. No, sir, not today.
The only other evidence bearing upon Medaglia's financial status that was before the motion judge was Medaglia's bankruptcy petition. The petition was a "no assets" petition, designed to liquidate all of Medaglia's assets in the discharge of his debts. The entire bankruptcy petition does not appear to have been made part of the record before us. But what we can discern from what has been presented, and as described in the briefs, seems to be the following. The petition listed as assets Medaglia's personal residence, shared by his wife, valued at $400,000 but with no equity, and personal assets of approximately $9,400. Against these assets, the petition listed the mortgage on his home, a $62,600 Internal Revenue Service tax lien, a $16,000 New York State tax lien, and a total of $4,700,797.15 owed various unsecured creditors.
It is our understanding, however, that all of the unsecured debt was ultimately discharged in the bankruptcy court with virtually no payment to these creditors. We assume, too, that much of the $800,000 debt reflected in the asset search of Mr. Gilbeau has been discharged. Moreover, plaintiffs contend that the petition shows a monthly income of $4,000, and transfers of property and businesses to people who appear to be relatives. The transfers occurred after the commencement of plaintiffs' federal district court complaint but sometime prior to the filing of the bankruptcy petition, and, facially at least, may well be suspect. There seems much to be said for plaintiffs' observation that Medaglia, obviously an entrepreneur and only in his mid to late forty's, has improved his "financial status ... by the distinguishing out of his prior debts."
On appeal, plaintiffs contend:
POINT I
THE LAW FIRM OF ORLOFF, LOWENBACH, STIFELMAN AND SIEGEL, P.A. COMMITTED LEGAL MALPRACTICE BY FAILING TO FILE A COMPLAINT FOR NON-DISCHARGEABILITY OF THE PLAINTIFFS' COMPLAINT AGAINST ALDO MEDAGLIA IN THE UNITED STATES BANKRUPTCY COURT IN A TIMELY FASHION.
POINT II
IF THE LAW FIRM OF ORLOFF, LOWENBACH, STIFELMAN AND SIEGEL, P.A. HAD NOT COMMITTED LEGAL MALPRACTICE BY FAILING TO FILE A COMPLAINT FOR NON-DISCHARGEABILITY OF THE PLAINTIFFS' COMPLAINT AGAINST ALDO MEDAGLIA IN THE UNITED STATES BANKRUPTCY COURT IN A TIMELY FASHION THEN THE PLAINTIFFS' COMPLAINT FOR NON-DISCHARGEABILITY AGAINST ALDO MEDAGLIA WOULD HAVE BEEN SUCCESSFUL.
POINT III
THE PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT.
POINT IV
THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT BASED ON THE ISSUE AS TO WHETHER OR NOT A FINAL JUDGEMENT AGAINST ALDO MEDAGLIA WOULD HAVE BEEN COLLECTIBLE BECAUSE THAT ISSUE SHOULD BE BIFURCATED FROM THE LIABILITY ISSUE AND TRIED SEPARATELY AFTER A JUDGMENT IS AWARDED TO THE PLAINTIFFS AGAINST THE DEFENDANT FOR A SUM CERTAIN.
POINT V
THE PROOFS SUBMITTED BY THE DEFENDANT IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGEMENT BASED ON GROUNDS THAT A FINAL JUDGMENT AGAINST ALDO MEDAGLIA WOULD NOT HAVE BEEN COLLECTIBLE WERE NOT ADMISSIBLE.
*756 We have previously stated that there is a basis, at least in the context of a motion for summary judgment, for the determination that disputes of material facts concerning the alleged malpractice preclude plaintiffs' motion for summary judgment on liability. We, therefore, reject the contentions in points I and III. Likewise as to the contentions in point II concerning the nondischargeability of plaintiffs' fraud claims against Medaglia under the applicable bankruptcy law, factual issues exist such that a determination, one way or the other, as a matter of law, is not, at this stage, appropriate. But we agree that, as contended in points IV and V, summary judgment should not have been granted defendant on the basis of noncollectibility of a judgment against Medaglia, albeit not necessarily for all the reasons asserted in those points.
The issue of noncollectibility, of course, is one of proximate cause. It is well settled that an attorney is liable for any loss "proximately caused the client by his negligence," Gautam v. DeLuca, 215 N.J.Super. 388, 397, 521 A.2d 1343 (App.Div.), certif. denied, 109 N.J. 39, 532 A.2d 1107 (1987), and that generally the burden is on the plaintiff client to show, by a preponderance of the evidence, what damages were suffered as a result of that negligence, Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 342, 419 A.2d 417 (1980). The claim of malpractice here is failure to meet a time-bar. In order to recover from an attorney for missing a time bar, "a client must establish the recovery which the client would have obtained if malpractice had not occurred." Frazier v. New Jersey Mfrs. Ins. Co., 142 N.J. 590, 601, 667 A.2d 670 (1995) (citation omitted). The measure of damages in such a case, then, is ordinarily the amount the client would have received in the absence of his attorney's negligence, ibid, and generally requires proof of the "viability and worth of the claim that was irredeemably lost," Gautam, supra, 215 N.J.Super. at 397, 521 A.2d 1343. Moreover, we have said that "the liability issue with regard to the underlying accident case as well as collectibility of any award therein is essential to a determination of the amount of damages flowing from counsel's malpractice in failing to properly prosecute the claim." Cotton v. Travaline, 179 N.J.Super. 362, 371, 432 A.2d 122 (App.Div.1981). See Wolpaw v. General Accident Ins. Co., 272 N.J.Super. 41, 49-50, 639 A.2d 338 (App.Div.), certif. denied, 137 N.J. 316, 645 A.2d 143 (1994); Hoppe v. Ranzini, 158 N.J.Super. 158, 165-66, 385 A.2d 913 (App.Div.1978).
This burden to establish damages proximately arising from a lawyer's negligence is often referred to as a "suit within a suit." Frazier, supra, 142 N.J. at 601, 667 A.2d 670; Lieberman, supra, 84 N.J. at 342, 419 A.2d 417; Gautam, supra, 215 N.J.Super. at 397, 521 A.2d 1343. We have recognized that, as accepted in other jurisdictions:
[P]laintiff has the burden of proving by a preponderance of the evidence that (1) he would have recovered a judgment in the action against the main defendant, (2) the amount of that judgment, and (3) the degree of collectibility of that judgment.
[Gautam, supra, 215 N.J.Super. at 398, 521 A.2d 1343 (quoting Hoppe v. Ranzini, supra, 158 N.J.Super. at 165, 385 A.2d 913).]
We have, thus far, however, eschewed a rigid acceptance of this formula. Ibid. And see Frazier, supra, 142 N.J. at 601, 667 A.2d 670; Lieberman, supra, 84 N.J. at 342-43, 419 A.2d 417. Moreover, while generally it would be a plaintiff's burden to establish damages, we observed in Hoppe that "fairness requires that the burden of proof with respect to the issue of collectibility should be upon the attorney defendants ...." 158 N.J.Super. at 171, 385 A.2d 913.
Plaintiffs argue here that the matter of collectibility of any judgment against Medaglia should have been bifurcated from the liability phase of the case. And, to be sure, we did in Hoppe v. Ranzini, supra, 158 N.J.Super. at 170, 385 A.2d 913, direct the trial court to bifurcate the liability and collectibility issues and to decide whether a judgment would be collectible only on a full trial record, as opposed to pretrial stipulated facts. However, as stated in Lieberman, the manner in which a plaintiff may prove damages is within the trial court's discretion. Lieberman, supra, 84 N.J. at 343, 419 A.2d 417. See Cotton v. Travaline, *757 supra, 179 N.J.Super. at 371, 432 A.2d 122 ("the manner in which a malpractice suit should properly proceed, including whether the malpractice issue should be bifurcated from damages, is within the sound discretion of the trial court."). We see no abuse of discretion here in the motion judge's determination to consider the issue of recoverable damages at this stage of the litigation.
We also reject plaintiffs' contention that the issue of collectibility cannot be determined prior to entry of a judgment for a specific amount of damages. Clearly, plaintiffs' damages could include their $50,000 counsel fee, the lost $500,000 investment, or the same amount they obtained against the other federal defendants by way of their default judgment. But the point is, damages here are by no means speculative. They are ascertainable enough for the purpose of considering whether plaintiffs can prove any viable damages.
The critical question to us is whether the present record so clearly shows that a judgment against Medaglia would not be reasonably collectible such that we could say with confidence that plaintiffs were not damaged. We have set forth the evidence, such as it is, as to that issue. Viewed most favorably for plaintiffs, we cannot say that the evidence thus far submitted so clearly establishes noncollectibility such that no reasonable juror could conclude otherwise.
Hoppe is instructive in considering the deficiencies in the present record. The malpractice complaint in Hoppe arose from the failure of the defendant lawyers to file a personal injury automobile accident complaint within the statute of limitations. The personal injury defendant was uninsured and appeared to have no assets. Moreover, his income did not exceed $45 a week and he had been incarcerated on a number of occasions. In the malpractice action, the defendant lawyers' motion for summary judgment on the grounds that any judgment that could have been obtained in the underlying personal injury suit would not have been collectible, was denied. In part the motion judge held that collectibility was not an issue for the jury in the malpractice action. On appeal, we affirmed the denial of the summary judgment on other grounds. But as to collectibility of a judgment in the underlying lawsuit and in so far as that issue related to plaintiff's damages in the malpractice action, we disagreed with the notion that that was not necessarily a matter for the fact-finder to consider. We thought, though, that final resolution as to how and under what circumstances collectibility should become a consideration of the issue of damages was best left for development of a "full factual setting." 158 N.J.Super. at 166, 385 A.2d 913.
Certainly, if any facts would have warranted a conclusion, as a matter of law, of noncollectibility and, thus, no damages proximately caused, they were present in Hoppe. The personal injury defendant was uninsured, had no assets and earned minimal salary, if any. The likelihood of ever collecting any award from him was, to put it mildly, dim. Nonetheless, we saw the need for a full factual record.
So too here. By virtue of the "no-asset" Chapter 7 bankruptcy proceeding, Medaglia may, at the time of the asset searches at least, have had no assets. But he was, as far as the record reveals, at one point capable of maintaining an income and acquiring assets. To the extent a substantial portion of his prior debts have been extinguished, he has benefited from the bankruptcy and there is nothing in the record that would suggest that his "no-assets" status is anything but temporary or that he does not now have viable income.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Plaintiffs were not properly listed in Medaglia's bankruptcy petition as creditors. If not, it might be wondered how their claims could be discharged, regardless of the failure to file a proceeding objecting to dischargeability. In affirming the bankruptcy court's dismissal of the untimely objection to the dischargeability of the federal district court claim, the Court of Appeals for the Second Circuit concluded that the law firm's actual notice of the Chapter 7 proceeding obviated the need for formal notice. In re Aldo Medaglia, 52 F.3d 451 (2nd Cir.1995). Therefore, Medaglia's bankruptcy effectuated a discharge of the federal claim.
[2] Medaglia's signature appears on the sales agreement with the written representations. He apparently denies the authenticity of that signature.
[3] As far as we can tell, this amount represents treble RICO damages plus counsel fees and costs.
[4] Mr. Atkinson lists in his report consideration of the following documents:

Bankruptcy Petition of Aldo Medaglia.
Certification of Terry Gilbeau dated May 27, 1997.
Search of bank accounts performed by Frank Nappi.
Pathfinder Group search of assets of Aldo Medaglia.
Confidential report of Pathfinder Group concerning assets of Aldo Medaglia dated April 10, 1997.
Confidential report of Pathfinder Group search for assets of Almed Construction Corp. dated May 14, 1997.
Asset search of bank accounts of Mr. Medaglia received August 28, 1995.
Not all of these documents, as far as we can tell, have been submitted to us; we cannot tell, moreover, whether they were all provided to the motion judge.