

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-8-1999

# Seibert v. Nusbaum Stein

Precedential or Non-Precedential:

Docket 98-5074,98-5128

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Seibert v. Nusbaum Stein" (1999). *1999 Decisions.* Paper 32.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/32

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 8, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-5074 and 98-5128

JOEL M. SEIBERT;
STACEY J. SEIBERT

v.

NUSBAUM, STEIN, GOLDSTEIN, BRONSTEIN &
COMPEAU, P.A., f/k/a Nusbaum, Stein, Goldstein &
Bronstein, P.A.; LEWIS STEIN,

      Appellants in No. 98-5074

JOEL M. SEIBERT;
STACEY J. SEIBERT,

      Appellants in No. 98-5128

v.

NUSBAUM, STEIN, GOLDSTEIN, BRONSTEIN &
COMPEAU, P.A., f/k/a Nusbaum, Stein, Goldstein &
Bronstein, P.A.; LEWIS STEIN

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 92-04645)
District Judge: Honorable John W. Bissell

Argued January 15, 1999

BEFORE: GREENBERG and RENDELL, Circuit Judges,
and POLLAK,* District Judge
_____

*Honorable Louis H. Pollak, Senior Judge of the United States District
court for the Eastern District of Pennsylvania, sitting by designation.

(Filed February 8, 1999)

Clifford M. Solomon (argued)
Corwin, Solomon & Tanenbaum
501 Fifth Avenue
New York, NY 10017

Attorneys for Appellants in
No. 98-5128

Thomas A. Egan (argued)
Flemming, Zulack & Williamson
One Liberty Plaza
35th Floor
New York, NY 10006

Attorneys for Appellants in
No. 98-5074, Cross-Appellees

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter comes on before this court on appeal and cross-appeal from the final judgment entered in the district court in this case on January 7, 1998. The case arose from the most commonplace of events, an intersection automobile accident on September 4, 1985. Nevertheless, the litigation which has ensued in the aftermath of the accident for more than 12 years has been truly extraordinary. While it would be desirable somehow to bring this litigation to an end, we are constrained to reverse in part and to require further proceedings. On certain issues, however, we will affirm and, as we explain, we do not reach other issues.

The following historical and procedural events have taken the case to its present posture. The plaintiffs, Joel M. Seibert and Stacey J. Seibert, are husband and wife and at all material times have been citizens of New York State. On September 4, 1985, Joel M. Seibert, who, as a matter of convenience we singularly shall call Seibert, was operating a motor vehicle in Burlington County, New Jersey, owned by his employer, Caldor Inc., when he was involved in an

2

accident at a controlled intersection with a vehicle owned and operated by Ruth Sexton, a New Jersey citizen. Seibert was injured in the accident. Sexton's vehicle was insured by CIGNA Insurance Company in a policy with $50,000 liability limit. National Union Fire Insurance Company insured the Caldor vehicle in a policy which included underinsured motorist coverage.

Seibert individually had an automobile liability policy issued in New York on his own vehicle by Travelers Insurance Company which also included underinsured motorist coverage. The Travelers policy provided that the underinsured motorist coverage would not apply if Seibert "shall, without written consent of [Travelers], make any settlement with or prosecute to judgment any action against any person or organization who may be legally liable therefor."

Seibert engaged the New Jersey law firm of Nusbaum, Stein, Goldstein, and Bronstein and, in particular, Lewis Stein of that firm, to seek damages for his injuries. We refer to the firm and Stein individually simply as Stein. Stein then, on September 3, 1986, brought a diversity action in the District of New Jersey against Sexton but by December 1987 Stein settled the case on behalf of Seibert with CIGNA for the $50,000 policy limits. With that settlement, Seibert's district court action against Sexton was dismissed and thus, as far as we can ascertain, Sexton has had no further involvement in this matter.

Thereafter Stein, on behalf of Seibert, demanded that Travelers pay the $250,000 underinsured motorist coverage to Seibert. Travelers, however, rejected the demand by a letter of September 1, 1988, addressed to Stein, on the sole ground that Seibert had settled the Sexton claim without its consent. On September 14, 1989, Stein brought an action in the district court in New Jersey on behalf of Seibert against Travelers seeking to establish that it was responsible for the underinsured motorist coverage. Travelers filed an answer admitting that it had issued a policy insuring Seibert but disclaiming any knowledge of the remaining allegations in Seibert's complaint. In addition, Travelers set forth eight separate defenses of a general nature which, except for a defense that it reserved

3

its right to seek to apply New York law, seem not particularly addressed to the circumstances of Seibert's complaint.

Thereafter, Travelers moved for summary judgment on the ground that Seibert had settled the Sexton action without its consent. The district court in that action, Seibert v. Travelers, Civ. No. 89-3966 (D.N.J. Jan. 8, 1991), by opinion dated January 8, 1991, granted Travelers' motion. While the court recognized that consent to settle clauses are against New Jersey public policy, see Longworth v. Van Houten, 538 A.2d 414 (N.J. Super. Ct. App. Div. 1988), the court held that New York law was controlling on the basis of New Jersey choice of law principles which it applied in that diversity of citizenship case. See Shuder v. McDonald's Corp., 859 F.2d 266, 269 (3d Cir. 1988). The court found that the consent to settle clause did not violate New York law as that state recognizes the use of such clauses to facilitate the subrogation rights of the insurance company. On appeal, we affirmed by judgment order on October 23, 1991. Seibert v. Travelers Indem. Co., 947 F.2d 936 (3d Cir. 1991). Upon our affirming the district court's summary judgment, any possibility that Seibert could recover from Travelers was gone.

Between the time of the district court's order granting summary judgment in the Travelers action and our judgment order affirming the summary judgment, Stein, on behalf of Seibert, instituted the third case arising out of the accident, i.e., Seibert v. National Union Fire Ins. Co., MRS-L-4298-91, in the Superior Court of New Jersey, Law Division, Morris County. In that action, Seibert sought, inter alia, to recover under the underinsured motorist coverage provisions of the National Union policy. Subsequently, other counsel was substituted for Stein and ultimately the National Union action was dismissed when National Union agreed to arbitrate Seibert's claim. The case eventually was settled for $140,000 which National Union paid on its underinsured motorist coverage.

While the National Union action was pending, Seibert started this New Jersey district court action, the fourth case arising from the accident, against Stein. It is this case which now is on appeal before us. While there were

4

numerous allegations in the complaint, its principal theory is that Stein wrongfully settled the Sexton action without Travelers' consent, thus forfeiting Travelers' underinsured motorist coverage.

Following protracted proceedings in the district court, the parties filed cross motions for summary judgment which resulted in the district court issuing opinions on August 20, 1997, and December 31, 1997, which we describe in some detail. In its initial opinion, the district court set forth the background of the case and then pointed out that this action was for legal malpractice. The court recognized that a legal malpractice case could require a "trial within a trial," but that the matter was before the court on motions for summary judgment. The court indicated that Stein sought summary judgment on the alternative theories that (1) he did not deviate from accepted standards of legal practice; and (2) even if he did, Seibert suffered no damages so Stein could not be liable. On the other hand, Seibert sought a summary judgment that Stein was liable for legal malpractice.

The district court indicated that in New Jersey a plaintiff in a legal malpractice action must demonstrate: (1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) breach of that duty; and (3) proximate causation of damages. See Lovett v. Estate of Lovett, 593 A.2d 382, 386 (N.J. Super. Ct. Ch. Div. 1991). The court said that Seibert based his claim on the district court's opinion in the Travelers action because Stein's "failure to notify Travelers under the consent to settle provision of its policy [fell] far below the minimal standard and duty of care which [Stein] owed to [Seibert]." The court then indicated that Stein's "default was the proximate cause of Travelers' successful refusal to pay any part of the potentially available underinsured coverage." Thus, to that extent, it granted Seibert's motion for summary judgment.

The court indicated, however, that it had not been established in Seibert's action against Travelers that he in fact would have recovered on the Travelers policy. All that was established was that Travelers had a defense to Seibert's claim.

5

The court then indicated that while the declarations page of Seibert's policy with Travelers listed certain endorsements, i.e., 33122 and 33150, as being part of the policy, "it is unclear whether these endorsements, either in whole or in part, were ever physically attached to the policy or otherwise specifically brought to Mr. Seibert's attention." The significance of endorsement 33122 is that it limited underinsured motorist coverage to accidents which occur in the State of New York. In any event, the court held that New York Insurance Law S 3420(f)(2) requires that underinsured motorist coverage in New York apply "in any state or Canadian province." Consequently, the court believed that the limitation in endorsement 33122 to New York accidents was ineffective. Thus, the court held that the $250,000 underinsured motorist coverage was available to Seibert who, because of "Stein's malpractice in failing to seek Travelers' consent to settle the Sexton suit" was denied access to the funds. The court then indicated that the parties recognized that the reasonable settlement value of Seibert's claim far exceeded $50,000. Thus, Stein's malpractice injured Seibert.

The court recognized that Stein argued "that the only right which [Seibert] lost because Travelers effectively denied coverage . . . was the right to arbitrate any claim or dispute against that company." The court, however, indicated that "it is by no means certain that Travelers would have pushed Mr. Seibert to arbitration had [Stein] sought Travelers' consent-to-settle in a timely fashion." Indeed, the court thought that it was "unlikely" that Travelers would have contended that the underinsured motorist coverage was not applicable to the New Jersey accident and that, in any event it was applicable, and arbitration would not have produced a different result.

In its December 31, 1997 opinion, the court considered damages. The court pointed out that in the National Union case Seibert recovered $140,000 in a settlement. 1 The court

---

1. The National Union action also was against Caldor. Although the district court referred to the case as the Caldor action, we understand that National Union actually paid the settlement. For our purposes, it does not matter whether Caldor or National Union paid the $140,000.

6

recognized that while Seibert might have recovered more or less from Travelers, "the $140,000 settlement sum is a reasonable and just figure to use as a base for calculations of interest due from [Stein] to [Seibert]." This base figure was important inasmuch as the court intended to fix damages on an interest theory to compensate Seibert for the loss of the use of the money because of the delay in making the settlement as the coverage sought from Travelers had been lost. Ultimately, the court found that damages would be calculated on the basis of prejudgment interest for nine years. The court also awarded damages on the basis of Seibert's attorney's fees and costs in this action. The court, however, refused to award punitive damages against Stein, to allow Seibert to amend his complaint to seek such damages, or to require Stein to disgorge the fees he collected from negotiating the Sexton settlement. The parties then filed this appeal and cross-appeal.

On this appeal, Stein raises three points. First, he contends that the Travelers policy would not have given Seibert coverage in this action even if Stein complied with the consent to settle clause. Second, he contends that even if the Travelers policy provided for underinsured motorist coverage, the court erred in granting summary judgment to Seibert because he made a full recovery from National Union and there is no proof that he would have recovered on the Travelers policy. Third, he contends that there was no basis for damages for the loss of use of money by reason of delay in recovering from National Union instead of Travelers, and for counsel and expert fees. As far as we can ascertain, however, Stein does not contend that he was not negligent in settling the claim against Sexton without complying with the consent to settle clause, although he does contend that without damage (and he contends there was none) he cannot be liable for malpractice.

Seibert cross-appeals with respect to damages. He contends that the district court should have fixed a higher rate of interest, allowed him to amend his pleadings to claim punitive damages, and compelled Stein to disgorge his fees from the Sexton action.

7

In view of the circumstance that the district court decided this case on cross motions for summary judgment, we are exercising plenary review on this appeal. Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993). We can affirm only if we conclude that the pleadings, depositions, answer to interrogatories and admissions on file, together with the affidavits, show that the party who obtained summary judgment on a point was entitled to that judgment as a matter of law and that there was no genuine dispute of material fact standing in his way. Fed. R. Civ. P. 56(c).

At the outset of our discussion, we must acknowledge that the district court had a most difficult task. Moreover, it is evident that the court was striving to reach a just and equitable result and, indeed, may have done so. That said, we are convinced that the court engaged in fact finding inappropriate in the procedural posture of the case and thus in large part we must reverse.

To start with, the court surely erred when it predicated its disposition on the theory that Seibert would have recovered $140,000 from Travelers if Stein had not erred with respect to the consent to settle clause. While we do not doubt that the $140,000 figure could have been a reasonable settlement of a claim against Travelers, neither we nor the district court can usurp the fact finding function of the jury and find that Seibert could have recovered that sum from Travelers. In fact, for all we know, Travelers would not have settled and ultimately would have prevailed at arbitration on the theory that Sexton was not liable. Moreover, contrary to the district court, we are not confident that if Travelers had taken the position that as a matter of law its coverage was inapplicable had it not prevailed on the consent to settle clause (a possibility on which we only can speculate), it would not have been successful. In this regard, we point out that the court indicated that it was unclear whether the disputed endorsements were attached to Seibert's policy. Such a situation hardly is a springboard to a summary judgment order.

The situation before us involves reviewing a judgment predicated on facts which we cannot know at this time. For

8

example, how can anyone know on the basis of the record before us what position Travelers would have taken on the legal issues if it had not prevailed originally on its summary judgment motion? We only know for sure that Travelers did not raise some of the issues in the litigation against it that Stein raises on this appeal. But, as Stein pointed out at oral argument, how do we know what Travelers would have done had it lost its motion for summary judgment?

Perhaps, as Stein suggested, it would have raised other defenses. On the other hand, it might have agreed to arbitrate, as did National Union, and at arbitration only argued that Sexton was not liable on negligence principles. In that event, Stein's argument that Travelers did not provide applicable underinsured motorist coverage would be irrelevant. Yet Travelers might have prevailed on the theory that Sexton was not liable. In the circumstances, we have concluded that, except to the extent that the orders of August 20, 1997, and December 31, 1997, are predicated on a finding that Stein committed malpractice by settling the Sexton action without notice to Travelers, those orders, insofar as they impose liability on Stein, must be reversed as must the judgment of January 7, 1998.

We make three further points with respect to Stein's appeal. First, we reject Seibert's contentions that Stein is barred by estoppel and waiver principles by reason of having brought the action against Travelers from contending that Travelers' policy did not afford Seibert underinsured motorist coverage. Naturally, a plaintiff's attorney in filing an action takes the position that the action is justified. If the attorney through some error precludes the case from being litigated on the merits, then the concept of a trial within a trial is not consistent with estopping the attorney from contending that if he had not made an error in any event he could not have been successful.

Second, we reject Seibert's contention that the district court in the Travelers action established that Seibert would have recovered from Travelers but for Stein's error. It is true that in the Travelers action the court said that because of Seibert's failure through Stein to comply with the consent to settle clause he is "not now entitled to the

9

underinsurance coverage [he] could have otherwise received." Yet clearly what it meant by this statement was that Seibert lost the possibility of recovering. After all, the court obviously did not consider the other insurance issues Stein advances nor did it consider Sexton's liability to Seibert.

Third, we recognize that we might as a matter of law adjudicate at this time whether, as Stein contends, the Travelers policy did not provide underinsured motorist coverage to Seibert for the Sexton accident or, if it did, the Travelers coverage was, as Stein contends, excess to the National Union policy. We, however, resist the temptation to do so as that determination may rest on disputed facts and in any event it may appear conclusively on the remand that Travelers would not have made those contentions had it not prevailed on its summary judgment motion. Moreover, we simply cannot grant Stein summary judgment at this time on a theory that the Travelers policy did not afford coverage, because viewing the matter on the record most favorably to Seibert with respect to Stein's motion,"we cannot say that the evidence thus far submitted so clearly established [noncoverage] such that no reasonable juror could conclude otherwise." Albee Assocs. v. Orloff, Lowenbach, Stifelman, and Siegal, 1999 WL 6537, at *7 (N.J. Super. Ct. App. Div. Jan. 11, 1999).

While we largely reverse on the appeal, we reach a different result on the cross-appeal. After a careful review of this case, we have concluded that Stein is entitled to a judgment as a matter of law with respect to Seibert's claim for punitive damages and for disgorgement of his fee for settling the Sexton case. A plaintiff cannot pursue a claim for punitive damages where, as here, no hint of such a claim was contained in the pleadings or the pretrial order. Furthermore, the undisputed facts of this case simply cannot support a punitive damages award.

In view of the aforesaid, we will reverse the orders of August 22, 1997, and December 31, 1997, and the judgment of January 7, 1998, except to the extent that they establish that Stein was guilty of malpractice by settling the Sexton claim without Travelers' consent (which is not to say that he is liable for malpractice), and except to the extent

10

that Seibert's punitive damages and disgorgement claims have been foreclosed. The punitive damages and disgorgement claims are out of this case. In view of our disposition, we do not reach the damages issues raised on this appeal. The parties will bear their own costs on this appeal.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

11